CRAVATH, SWAINE & MOORE

WORLDWIDE PLAZA
825 EIGHTH AVENUE
NEW YORK, NY 10019-7475

TELEPHONE: (212) 474-1000
FACSIMILE: (212) 474-3700

33 KING WILLIAM STREET
LONDON EC4R 9DU ENGLAND
TELEPHONE: 44-171-453-1000
FACSIMILE: 44-171-860-1150

SUITE 2609, ASIA PACIFIC FINANCE TOWER
3 GARDEN ROAD, CENTRAL
HONG KONG
TELEPHONE: 852-2509-7200
FACSIMILE: 852-2509-7272

WRITER'S DIRECT DIAL NUMBER

(212) 474-1626

SAMUEL C. BUTLER
GEORGE J. GILLESPIE, III
THOMAS D. BARR
MELVIN L. BEDRICK
GEORGE T. LOWY
ROBERT ROSENMAN
ALAN J. HRUSKA
JAMES M. EDWARDS
FREDERICK A.O. SCHWARZ, JR.
CHRISTINE BESHAR
ROBERT S. RIFKIND
DAVID O. BROWNWOOD
PAUL M. DODYK
THOMAS R. BROME
ROBERT D. JOFFE
HERBERT L. CAMP
ALLEN FINKELSON
RONALD S. ROLFE
PAUL C. SAUNDERS
MARTIN L. SENZEL
DOUGLAS D. BROADWATER
ALAN C. STEPHENSON
MAX R. SHULMAN
STUART W. GOLD
JOHN W. WHITE
JOHN E. BEERBOWER
EVAN R. CHESLER
PATRICIA GEOGHEGAN
D. COLLIER KIRKHAM
MICHAEL L. SCHLER
DANIEL P. CUNNINGHAM
KRIS F. HEINZELMAN
B. ROBBINS KIESSLING
ROGER D. TURNER
PHILIP A. GELSTON
RORY O. MILLSON
NEIL P. WESTREICH
FRANCIS P. BARRON
RICHARD W. CLARY
WILLIAM P. ROGERS, JR.
JAMES D. COOPER
STEPHEN L. GORDON
ROBERT A. KINDLER
DANIEL L. MOSLEY
GREGORY M. SHAW
PETER S. WILSON
JAMES C. VARDELL, III
ROBERT H. BARON
KEVIN J. GREHAN
W. CLAYTON JOHNSON
STEPHEN S. MADSEN
C. ALLEN PARKER
MARC S. ROSENBERG
WILLIAM B. BRANNAN
LEWIS R. STEINBERG
SUSAN WEBSTER
WILLIAM H. WIDEN
TIMOTHY G. MASSAD
DAVID MERCADO
ROWAN D. WILSON
JOHN T. GAFFNEY
PETER T. BARBUR
SANDRA C. GOLDSTEIN
PAUL MICHALSKI
THOMAS G. RAFFERTY
MICHAEL S. GOLDMAN
GEORGE W. BILICIC, JR.
RICHARD HALL
ELIZABETH L. GRAYER
JULIE A. NORTH
STEPHEN L. BURNS
KATHERINE B. FORREST
KEITH R. HUMMEL
DANIEL SLIFKIN
JEFFREY A. SMITH
ROBERT I. TOWNSEND, III
WILLIAM J. WHELAN, III
SCOTT A. BARSHAY
PHILIP J. BOECKMAN
ROGER G. BROOKS
WILLIAM V. FOGG
FAIZA J. SAEED
RICHARD J. STARK

April 29, 1999

John Oakes Marriott Trust
u/a/d 8/19/60
Tax ID No. 13-6028390

Dear Sirs:

This firm is counsel for the present trustees of the above-described trust.

The trustees timely filed amended Federal fiduciary income tax returns for the 1977, 1978 and 1979 tax years, which amended Returns showed refunds due. No definitive response was received from the Internal Revenue Service.

I enclose a photocopy of my letter dated November 25, 1997 (with copies of all exhibits referred to in that letter) inquiring about the refund claims. We received no response from the Internal Revenue Service

Please let me know if you need any additional information to process the refund claims.

Very truly yours,

Paul D. Siniawer

Internal Revenue Service
Holtsville,
NY 00501

Encls.

S

CERTIFIED MAIL--RETURN RECEIPT REQUESTED

CRAVATH, SWAINE & MOORE

WORLDWIDE PLAZA
825 EIGHTH AVENUE
NEW YORK, NY 10019-7475

TELEPHONE: (212) 474-1000
FACSIMILE: (212) 474-3700

PAUL D. SINIAWER
SENIOR ATTORNEY

CITYPOINT
ONE ROPEMAKER STREET
LONDON EC2Y 9HR ENGLAND
TELEPHONE: 44-207-453-1000
FACSIMILE: 44-207-860-1150

SUITE 2609, ASIA PACIFIC FINANCE TOWER
3 GARDEN ROAD, CENTRAL
HONG KONG
TELEPHONE: 852-2509-7200
FACSIMILE: 852-2509-7272

WRITER'S DIRECT DIAL NUMBER
(212) 474-1626

December 13, 2002

John Oakes Marriott Trust
u/a/d 8/19/60
Tax I.D. No. 13-6028390

Dear Sirs:

This firm is counsel for the trustees of the above-described trust, which terminated a few years ago.

During the course of the administration of the trust, the trustees timely filed amended Forms 1041 for the trust for the 1977, 1978 and 1979 tax years of the trust which claimed refunds of fiduciary income taxes previously paid by the trustees for those years. The refunds have never been received.

I enclose a copy of my letter dated November 25, 1997 to the Internal Revenue Service and copies of all of the enclosures referred to in that letter regarding the refund claims. To date, I have not received any response to that letter, and none of the refunds has ever been received by the trustees.

Very truly yours,

Paul D. Siniawer

Internal Revenue Service
Holtsville, NY 00501

Encls.

584A

CERTIFIED MAIL -- 7000 2510 0004 0299 7681

SEP-28-2004 11:31 E & G 212 436 1063 P.01/09

TO: PAUL D. SINIAWER

PHONE NUMBER: 212-474-1000

FAX NUMBER: 212-474-3700

CONFIDENTIAL FACSIMILE COMMUNICATION

This communication is intended for the sole use of the individual to whom it is addressed. This communication may contain privileged information that is confidential and exempt from disclosure under applicable law. If the reader of this communication is not the intended recipient or the employee, you are hereby notified that any distribution, or copying of this communication may be strictly prohibited. If you have received this communication in error, please notify the sender immediately by telephone call, and return the communication at the address below via United States Postal Service.

THANK YOU

FROM: RAWLE I. N[illegible]

INTERNAL REVENUE SERVICE-MANHATTAN DISTRICT
EXAMINATION BRANCH 5 – 6TH FLOOR
290 BROADWAY
NEW YORK, N.Y. 10007

PHONE NUMBER: 212 -- 436 -- 1410
FAX NUMBER: 212 -- 436 -- 1063

DATE: 9/28/04 PAGES: 9 In addition to coversheet

REGARDING:

THE ATTACH DOCUMENTS DETAILS WHY I BELIEVE YOUR CLAIM TO CHANGE THE TRUST FROM A SIMPLE TRUST TO A ~~[illegible]~~ GRANTOR'S TRUST SHOULD BE REJECTED. IF YOU AGREE WITH MY ASSERTION THEN IT MIGHT NOT BE NECESSARY FOR US TO MEET ON THURSDAY THE 30TH OF SEPTEMBER 2004.

**(A) SEC. 671. TRUST INCOME, DEDUCTIONS, AND CREDITS ATTRIBUTABLE TO GRANTORS AND OTHERS AS SUBSTANTIAL OWNERS.**

Where it is specified in this subpart that the grantor or another person shall be treated as the owner of any portion of a trust, there shall then be included in computing the taxable income and credits of the grantor or the other person those items of income, deductions, and credits against tax of the trust which are attributable to that portion of the trust to the extent that such items would be taken into account under this chapter in computing taxable income or credits against the tax of an individual. Any remaining portion of the trust shall be subject to subparts A through D. No items of a trust shall be included in computing the taxable income and credits of the grantor or of any other person solely on the grounds of his dominion and control over the trust under section 61 (relating to definition of gross income) or any other provision of this title, except as specified in this subpart.

**(B) The Grantor Trust Rules: Synopsis - grantor trust rules**

A grantor who retains certain powers over or interests in a trust is treated as the owner of the trust (Code Sec. 673 through Code Sec. 677). As owner of the trust, the grantor is taxed directly on the trust's income under Code Sec. 671 (see ¶24,686 for details on reporting). These rules were originally designed to prevent a person from reducing his family's total tax bill by shifting income-producing property to a trust in a lower income tax bracket than his own, while retaining controls or powers over the trust property. However, as explained at ¶24,683.028, the grantor trust rules have become far less significant under the current tax system.

→ NO RETURN WAS FILED BY THE GRANTOR, SO NOT A GRANTOR'S TRUST.

(C) FINAL-REG, 2004FED ¶5503, §1.61-1., **Gross income**
**Gross income**

[CCH Explanations]

(a) ***General definition.*** —Gross income means all income from whatever source derived, unless excluded by law. Gross income includes income realized in any form, whether in money, property, or services. Income may be realized, therefore, in the form of services, meals, accommodations, stock, or other property, as well as in cash. Section 61 lists the more common items of gross income for purposes of illustration. For purposes of further illustration, §1.61-14 mentions several miscellaneous items of gross income not listed specifically in section 61. Gross income, however, is not limited to the items so enumerated.

**(D) SEC. 61. GROSS INCOME DEFINED.**

**61(a)** GENERAL DEFINITION. —Except as otherwise provided in this subtitle, gross income means all income from whatever source derived,

**61(a)(15)** Income from an interest in an estate or trust.

GRANTOR DID NOT FILE A RETURN BECAUSE HE WAS NOT LIABLE FOR THE TRUST'S INCOME.

**(E) Income, Deductions and Credits: Synopsis - grantor trust income, deductions and credits**

A grantor or other person who is regarded as the owner of any portion of a trust must include, in computing his taxable income and credits, those items of income, deductions, and credits of the trust that are attributable to the portion of the trust that the grantor is regarded as owning (Code Sec. 671; Reg. §1.671-2(a)).

→ NOTHING WAS FILED SO NOTHING WAS REGARDED AS OWNING.

> ***Example:*** Tom Welch sets up a trust reserving to himself a right to revoke it at any time. During this year, the trust received $25,000 in income derived from the trust corpus, incurred $3,000 in administrative expenses and trustee's fees, and paid $22,000 to the named beneficiary. Welch must include the full $25,000 in his gross income for the year. The $3,000 is deductible by Welch as a Code Sec. 212 expense for the production of income to the extent that the amount, when combined with Welch's direct miscellaneous itemized deductible expenses, exceeds 2% of his adjusted gross income.

No items of a trust's income are included in computing the income or credits of the grantor (or another person) solely on the grounds of dominion and control over the trust under the general gross income provisions of Code Sec. 61 (Code Sec. 671). The taxability of grantor trusts is governed solely by Code Sec. 671 through Code Sec. 678.

However, the fact that a person escapes being taxed under the grantor trust rules does not prevent him from being taxed under other general principles, such as the assignment of income doctrine. For example, an individual who sets up a trust that is not a grantor trust and assigns his right to future income under an employment contract and interest from a bond to the trust will be taxed on such income. Even though the individual is not taxed as the owner of the trust under the grantor trust rules, he is taxed on the income from the employment contract and the interest on the bond under assignment of income principles.

**(F) Income, Deductions and Credits: Reporting grantor trust income and expenses**

In general, every trust must file Form 1041, U.S. Income Tax Return for Estates and Trusts (Reg. §1.641(b)-2). Grantor trusts are not recognized as separate taxable entities for federal income tax purposes because the grantor has not relinquished complete dominion and control over the trust. This treatment may apply to disregard the entire trust, or may only apply to a portion of the trust's assets over which the grantor retains a prohibited power or reversionary interest.

Under Reg. §1.671-4(a), where a trust has assets resulting in income, deductions or credits and those assets include both assets that *do* and *do not* fall within the grantor trust provisions, those items of income, deduction and credit that *do not* fall within these

provisions are included on the trust's Form 1041 return. Those items of income, deduction and credit that derive from assets over which the grantor has retained prohibited powers and/or reversionary interests are not included on Form 1041, but are instead listed in a separate statement which is required to be attached to the trust's Form 1041 when it is filed (Reg. §1.671-4(a)).

There are two exceptions to the requirement that the trustee must file the annual Form 1041 return:

(1) Where the entire assets of the trust fall under the grantor trust provisions such that all of the income, deductions and credits would be listed on the attached statement rather than on Form 1041 *and* the grantor and the trustee are the same person, Reg. §1.671-4(b)(2)(ii) permits the trustee to not file a return. Instead, the grantor reports the trust's tax items directly on his own return.

(2) Where the entire assets of a revocable trust fall under the grantor trust provisions such that all of the income, deductions and credits would be listed on the attached statement rather than on Form 1041 *and* the sole grantors are a husband and wife who file jointly and one or both are also trustees or co-trustees with a third-party, Reg. §1.671-4(b)(8) permits them to not file a Form 1041, but instead the couple reports the trust's tax items directly on their joint return.

For a discussion of the payment of estimated taxes by trusts and estates, see ¶39,560.027.

**(G) Committee Reports on P.L. 104-188 (Small Business Job Protection Act of 1996)**

**.08 Inbound grantor trusts with foreign grantors.** —*Foreign grantors not treated as owners.* —Under the bill, the grantor trust rules generally apply only to the extent that they result, directly or indirectly, in income or other amounts (if any) being currently taken into account in computing the income of a U.S. citizen or resident or a domestic corporation. Thus, the grantor trust rules generally do not apply to any portion of a trust where their effect is to treat a foreign person as owner of that portion.

The bill provides certain exceptions to the rule described above. Under one exception, the grantor trust rules continue to apply to the portion of a trust where that portion of the trust is revocable by the grantor either without approval of another person or with the consent of a related or subordinate party who is subservient to the grantor (as defined in sec. 672(c)). Under another exception, the grantor trust rules continue to apply to the portion of a trust where the only amounts distributable from that portion during the lifetime of the grantor are to the grantor or the grantor's spouse. The general rule denying grantor trust status does not apply to trusts established to pay compensation, and certain trusts in existence as of September 19, 1995 provided that such trust is treated as owned by the grantor under section 676 or 677 (other than sec. 677(a)(3)).[1] In addition, the grantor trust rules generally apply where the grantor is a controlled foreign corporation (as defined in sec. 957). Finally, the grantor trust rules continue to apply in determining

whether a foreign corporation is characterized as a passive foreign investment company ("PFIC"). Thus, a foreign corporation cannot avoid PFIC status by transferring its assets to a grantor trust.

If a U.S. beneficiary, or a family member of such a beneficiary,[2] of an inbound grantor trust transfers property to the foreign grantor, such beneficiary generally is treated as a grantor of a portion of the trust to the extent of the transfer. This rule applies without regard to whether the foreign grantor is otherwise treated as the owner of any portion of such trust. However, this rule does not apply if the transfer is a sale of the property for full and adequate consideration or if the transfer is a gift that qualifies for the annual exclusion described in section 2503(b).

The bill provides a special rule that allows the Secretary of the Treasury to recharacterize a transfer, directly or indirectly, from a partnership or foreign corporation which the transferee treats as a gift or bequest, to prevent the avoidance of the purpose of section 672(f).[3]

In a case where a foreign person (that would be treated as the owner of a trust but for the above rule) actually pays tax on the income of the trust to a foreign country, the Committee anticipates that Treasury regulations will provide that, for foreign tax credit purposes, U.S. beneficiaries that are subject to U.S. income tax on the same income will be treated as having paid the foreign taxes that are paid by the foreign grantor. Any resulting foreign tax credits would be subject to applicable foreign tax credit limitations.

The bill provides a transition rule for any domestic trust that has a foreign grantor that is treated as the owner of the trust under present law, but becomes a nongrantor trust under the bill. If such a trust becomes a foreign trust before January 1, 1997, or if the assets of such a trust are transferred to a foreign trust before that date, such trust is exempt from the excise tax on transfers to a foreign trust otherwise imposed by section 1491. However, the bill's new reporting requirements and penalties are applicable to such a trust and its beneficiaries. In addition, the assets of such a trust will be treated as if they were recontributed to a nongrantor trust by the foreign grantor, with no recognition of gain or loss, on the date the trust ceases to be treated as a grantor trust. The nongrantor trust will have the same basis in such assets as did the grantor on the date the trust ceases to be treated as a grantor trust.

*Distributions by foreign trusts through nominees.* —The bill generally treats any amount paid to a U.S. person, where the amount was derived (directly or indirectly) from a foreign trust, as if paid by the foreign trust directly to the U.S. person. This rule disregards the role of an intermediary or nominee that may be interposed between a foreign trust and a U.S. beneficiary. Unlike present law, however, the rule applies whether or not the trust was created by a U.S. person. The rule does not apply to a withdrawal from a foreign trust by its grantor, with a subsequent gift or other payment to a U.S. person.

*Effective Date.* —The provisions discussed in this part are effective on the date of enactment. —**House Committee Report from H.R. 3286.**

*Senate Amendment.* —No provision.

*Conference Agreement.* —The conference agreement adopts the House bill provision of H.R. 3286 with one modification and two clarifications.

If a U.S. beneficiary of an inbound grantor trust transfers property to a foreign grantor, such beneficiary generally is treated as a grantor of a portion of the trust to the extent of the transfer. Under the conference agreement, this provision generally does not apply transfers by a family member of such a beneficiary. —**Conference Committee Report.**

[1] The exception does not apply to the portion of any such trust attributable to any transfers made after September 19, 1995.

[2] For this purpose, a family member is generally defined as a brother, sister, spouse, ancestor or lineal descendant.

[3] See discussion below for reporting requirements under the bill with respect to certain foreign gifts and bequests received by a U.S. person.

**(H) Committee Reports on P.L. 101-508 (Revenue Reconciliation Act of 1990)**

**.085 Trusts with foreign grantors.** —Under the provision, a U.S. person who is a beneficiary of a trust is treated as the grantor to the extent that the beneficiary transferred property, directly or indirectly, to a foreign person who otherwise would have been treated as the owner under the "grantor trust rules." For purposes of this rule, annual gifts of less than $10,000 are disregarded.

*Example.* —A and B are foreign persons. A transfers property to B's spouse, who then transfers the property to B. B transfers the property to a trust in which A is a discretionary income beneficiary. A becomes a United States person. Under the provision, A is treated as owner of the portion of the trust in which he has an income interest.

The inclusion of this provision in the bill creates no inference preventing the Internal Revenue Service and the courts from determining that income of a trust of a grantor trust is properly taxable to a person other than the nominal settler.

*Effective Date.* —The provision is effective with respect to any trust created after the date of enactment and that portion of an existing trust that is attributable to contributions after that date. —**House Committee Report.**

The conference agreement follows the House bill. The conferees intend that no inference be drawn that would prevent a court from treating a person who is not directly the grantor as the grantor under present-law trust rules. —**Conference Committee Report.**

**(I) Overview of Grantor Trust Rules**

Under the grantor trust rules, a person (the grantor) who transfers property to a trust and retains certain powers or interests is treated as the owner of the trust for income tax purposes. As a result, the income and deductions attributable to the trust are included in the grantor's income. [2004FED¶24,680 ].

**(J) IRC Sec. 671., TRUST INCOME, DEDUCTIONS, AND CREDITS ATTRIBUTABLE TO GRANTORS AND OTHERS AS SUBSTANTIAL OWNERS**

Where it is specified in this subpart that the grantor or another person shall be treated as the owner of any portion of a trust, there shall then be included in computing the taxable income and credits of the grantor or the other person those items of income, deductions, and credits against tax of the trust which are attributable to that portion of the trust to the extent that such items would be taken into account under this chapter in computing taxable income or credits against the tax of an individual. Any remaining portion of the trust shall be subject to subparts A through D. No items of a trust shall be included in computing the taxable income and credits of the grantor or of any other person solely on the grounds of his dominion and control over the trust under section 61 (relating to definition of gross income) or any other provision of this title, except as specified in this subpart.

**(K) Return for Grantor Trust**

Generally, items of income, deduction, or credit that are treated as belonging to a trust grantor or another person are not reported by the trust on Form 1041. Instead, these items are reflected on the income tax return of the grantor (or other person who is taxable on the trust income). A separate statement should be attached to Form 1041 stating the name, taxpayer identification number and address of the person to whom the income is taxable and setting forth the income, deductions and credits (Reg. §1.671-4). [2004FED¶24,685 ]. Alternative reporting methods may be available for certain grantor trusts (Reg. §1.671-4(b)). [2004FED¶24,685 ].

**(L) Power to Control Beneficial Enjoyment**

A grantor is taxed on the trust income if the grantor or the grantor's spouse (as defined at ¶578, above) retains the power to control the beneficial enjoyment (Code Sec.

6 of 8

674; Reg. §1.674(a)-1). [2004FED ¶24,720, 2004FED ¶24,721 ]. However, there are a number of exceptions listed in the regulations (Reg. §1.674(b)-1 —Reg. §1.674(d)-2). [2004FED¶24,722 —2004FED¶24,725 ].

**(M) Trust, Estate and Fiduciary Defined**

A trust is a separate taxable entity for federal income tax purposes. A "trust," for federal tax law purposes, usually involves an arrangement created either by a will upon the creator's death or by a trust instrument that may take effect during the creator's life. Under either arrangement, the trustees take title to the property in order to protect or conserve it for the beneficiaries (see also ¶502). Usually, the beneficiaries merely accept the trust's benefits. However, even if the beneficiaries are the persons who planned or created it, the trust will still be recognized as a separate taxable entity if its purpose was to vest responsibility in the trustees for protecting and preserving property for beneficiaries who cannot share in the discharge of this responsibility (Reg. §301.7701-4) [2004FED¶24,267.01, 2004FED¶43,090 ]. and if the grantors do not retain any impermissible powers. See ¶573 et seq. for rules governing special types of trusts, such as grantor trusts and charitable trusts.

→ SIMPLE OR COMPLEX TRUST

**(N) Return of Estate or Trust by Fiduciary**

A fiduciary must file a return on Form 1041 for the trust or estate if: (1) the trust (other than a trust exempt under Code Sec. 501(a)) for the tax year has any taxable income or has gross income of $600 or more, regardless of the amount of taxable income; (2) the estate has gross income of $600 or more for the tax year; (3) any beneficiary of the estate or trust is a nonresident alien (unless the trust is exempt under Code Sec. 501(a)) (Code Sec. 6012(a)(3); Reg. §1.6012-3); [2004FED¶35,142, 2004FED¶35,146, 2004FED¶35,150.55 ]. or (4) an individual's bankruptcy estate under Chapter 7 or Chapter 11 of the Bankruptcy Code has gross income equal to or in excess of the sum of the personal exemption amount plus the basic standard deduction amount for married individuals filing separately (Code Sec. 6012(a)(9)). [2004FED¶35,142 ]. For 2003, that sum is $7,800. For 2004, that sum is $7,950, as projected by CCH.

When there is more than one fiduciary, the return can be filed by any one of them. However, when an estate has both domiciliary and ancillary representatives, each representative must file a return (Reg. §1.6012-3(a)(1) and (3)). [2004FED¶35,146 ].

A trustee of two or more trusts must file a separate return for each trust, even though the trusts were created by the same grantor for the same beneficiaries (Reg. §1.6012-3(a)(4)). [2004FED¶35,146 ]. However, see ¶515 for when two or more trusts may be treated as one trust.

The return must be filed on or before the 15th day of the 4th month following the close of the tax year (Reg. §1.6072-1(a)). [2004FED¶36,721, 2004FED¶36,723.01 ]. In filing its first return, an estate may choose the same accounting period as the decedent, or

it may choose a calendar tax year or any fiscal year it wishes. If it chooses the decedent's accounting period, its first return will be for a short period to cover the unexpired term of the decedent's regular tax year (Code Sec. 441 and Code Sec. 443). [2004FED¶20,302, 2004FED¶20,500 ]. An exemption of $600 (Code Sec. 642(b)) is allowed on a short-period return, without proration (see ¶534). [2004FED¶24,280 ].

With a few limited exceptions, trusts (other than those that are ignored for tax purposes under the rules discussed at ¶573 and following) must adopt a calendar tax year (Code Sec. 644). [2004FED¶24,350 ]. An existing trust that is required to change its tax year must annualize any income earned in the short year. The Form 1041 for a trust must generally be filed on or before April 15 following the close of the tax year. Trusts may request an automatic three-month extension of the filing deadline by submitting Form 8736 (Application for Automatic Extension of Time To File U.S. Return for a Partnership, REMIC, or for Certain Trusts) on or before the return's due date.

The fiduciary of an estate or trust need not file a copy of the will or trust instrument with the estate or trust income tax return unless the IRS requests it. If the IRS does request a copy of the will or trust instrument, the fiduciary should file it (including any amendments), accompanied by a written declaration of truth and completeness and a statement indicating the provisions of the will or trust instrument that determine the extent to which the income of the estate or trust is taxable to the estate or trust, the beneficiaries, or the grantor (Reg. §1.6012-3(a)(2)). [2004FED¶35,146 ].

An estate or trust that is obligated to file an income tax return must furnish a copy of Schedule K-1 (Form 1041) to each beneficiary (1) who receives a distribution from the trust or estate for the year or (2) to whom any item with respect to the tax year is allocated. This statement must contain the information required to be shown on the return and be furnished on or before the date on which the return is to be filed (Code Sec. 6034A). [2004FED¶35,460, 2004FED¶35,461.01 ]. In addition, a copy must be attached to the fiduciary's Form 1041. For each failure to file a correct payee statement, a $50 penalty may be assessed (Code Sec. 6722). [2004FED¶40,230 ].

*Payment of Tax and Estimated Tax.* The entire income tax liability of an estate or trust must be paid on or before the due date for its return (Reg. §1.6151-1(a)). [2004FED¶37,081 ]. In addition, estates that have been in existence for more than two years and both new and existing trusts must pay estimated tax in the same manner as individuals. See ¶518.

8 of 8

CRAVATH, SWAINE & MOORE LLP

WORLDWIDE PLAZA
825 EIGHTH AVENUE
NEW YORK, NY 10019-7475

TELEPHONE: (212) 474-1000
FACSIMILE: (212) 474-3700

WRITER'S DIRECT DIAL NUMBER
(212) 474-1626

PAUL D. SINIAWER
SENIOR ATTORNEY

CITYPOINT
ONE ROPEMAKER STREET
LONDON EC2Y 9HR
TELEPHONE: 44-207-453-1000
FACSIMILE: 44-207-860-1150

November 18, 2004

John Oakes Marriott Trust
u/a/d 8/19/60
Tax ID No. 13-6028390

Dear Mr. Noel:

I am writing with respect to the income tax refunds claimed by the trustees of the above-described trust for calendar years 1977, 1978 and 1979. After reviewing the file, you have informed me that the trust should not be treated as a grantor trust and you propose to reject the refund claims. I have reviewed the information that you have sent me in support of your position and I disagree with your conclusion.

You have indicated that the trust should not be treated as a grantor trust for 1977, 1978 and 1979 because the grantor was a nonresident alien and did not file U.S. income tax returns to report the trust's income.

From its inception in 1960, this trust was a grantor trust under § 677 (a)(2) of the Internal Revenue Code ("IRC"). Under current law, IRC § 672 (f)(1) provides that the grantor trust rules (IRC §§ 671-679) shall apply to a trust "only to the extent such application results in an amount (if any) being currently taken into account (directly or through 1 or more entities) under this chapter in computing the income of a citizen or resident of the United States or a domestic corporation." If current law were to apply to the trust, the trust would not be treated as a grantor trust because the grantor, John Oakes

Marriott, is a nonresident alien of the United States and the application of the grantor trust rules to the trust would not result in any income taken into account by a United States person.

The current language of IRC § 672 (f)(1) was added to the Code by the Small Business Job Protection Act of 1996 (P.L. 104-188 § 1904(a)(1)). Prior to the 1996 amendment, IRC § 672 (f) provided, in part, as follows:

> If (A) but for this subsection, a foreign person would be treated as the owner of any portion of a trust, and (B) such trust has a beneficiary who is a United States person, such beneficiary shall be treated as the grantor of such portion to the extent such beneficiary has made transfers of property by gift (directly or indirectly) to such foreign person. IRC § 672 (f) (1994)

Under the grantor trust rules (prior to the 1996 amendment) "a grantor that retains certain rights or powers generally is treated as the owner of the trust's assets without regard to whether the grantor is a domestic or foreign person."[1] The reason for the 1996 amendment to the Code was that

> if a foreign person created a trust with U.S. beneficiaries that was treated as a grantor trust for U.S. tax purposes and if the foreign person's home country did not tax the income, the income would not be subject to tax by either the United States or the foreign country. The Congress believed that the income derived through these type of arrangements should be subject to tax in a least one jurisdiction.[2]

The Small Business Job Protection Act of 1996, however, limited the application of the amendment to IRC § 672(f) by providing the following exception:

> "(2) Exceptions for Certain Trusts. – The amendments made by this section shall not apply to any trust –

---

[1] Conference Committee Report on the Small Business Job Protection Act of 1996, H.R. Conf Report No. 104-737.

[2] J.C.S. 12-96, Joint Committee on Taxation General Explanations of Tax Legislation Enacted in the 104th Congress (Blue Book) (1996).

"(A) which is treated as owned by the grantor under section 676 or 677 (other than subsection (a)(3) thereof) of the Internal Revenue Code of 1986, and

"(B) which is in existence on September 19, 1995.

"The preceding sentence shall not apply to the portion of any such trust attributable to any transfer to such trust after September 19,1995."[3]

The Trust was in existence on September 19, 1995, and should be treated as owned by the grantor under IRC § 677(a)(2). Therefore, the current Code provision, in IRC § 672(f)(1), which restricts the application of the grantor trust rules to situations that would result in the taxation of the income to a U.S. person, does not apply to the trust. As a grantor trust, the trust should not have been taxed on its undistributed income. Instead, that income should have been attributed to the grantor, even though the grantor was a nonresident alien.[4] Therefore, the trust is entitled to a refund of the fiduciary income taxes it paid in 1977, 1978 and 1979.

Very truly yours,

Paul D. Siniawer

Mr. Rawle I. Noel
Internal Revenue Service
Manhattan District Examination Branch 5
290 Broadway, 6th Floor
New York, NY 10007

584A

CERTIFIED MAIL 7003 3100 0005 9316 9767

---

[3] P.L. No. 104-188 § 1904(d)(2) (1996)

[4] See Rev. Rul 69-70, 1969-1 Cum. Bull. 182

# FACSIMILE TRANSMISSION

Internal Revenue Service

290 Broadway 6th floor
New York NY 10007

Mack #
(212) 474-1000

| | |
|---|---|
| SEND TO<br>PAUL SINIAWER | FROM<br>RAWLE NOEL |
| SUBJECT: CONSIDERATION OF 1977, 1978 & 1979 CLAIM FOR REFUND | Date: 2/17/05 |
| Phone Number: 212-474-1000 / FAX Number: 212-474-3700 | Phone Number: 212-436-1402 / FAX Number: 212-436-1063 |

TOTAL PAGES, including cover sheet ( 2 )

COMMENTS:

Confidentiality Notice

This facsimile transmission and/or accompanying documents may contain information which is privileged or is subject to non-disclosure provisions of Federal law. If you are not the intended recipient, you are hereby notified that any disclosure, distribution, or taking of action in reliance on the contents, is prohibited.

| Form 4564 | Department of the Treasury<br>Internal Revenue Service<br>Information Document Request | Request Number |
|---|---|---|

| To: (Name of Taxpayer and Company, Division or Branch) | Subject: Consideration of 1977, 1978 and 1979 claim for refund/Form 1041 |
|---|---|
| JOHN OAKES MARRIOTT TRUST<br>C/O PAUL D. SINIAWER<br>825 EIGHTH AVENUE, 43RD FLOOR<br>NEW YORK, N.Y. 10019 | Submitted to: POWER OF ATTORNEY/FAXED<br>Dates of Previous Requests: |

Description of Documents/Information Requested:

PLEASE RESPOND TO THE FOLLOWING AS I CONTINUE THE EXAMNATION OF THIS CLAIM FOR REFUND WITH THE ASSISTANCE OF MY AREA COUNSEL:

1) What were the sources of income for the trust during the tax years 1978 and 1979? Each source of income should be separately listed.

2) Did the settlor's father receive any of the income proceeds during the years 1977, 1978 and 1979?

3) According to you, the settler never filed a tax return in the U.S. for the years 1977, 1978 or 1979, but did he pay any taxes on the income from the trust in the United Kingdom for those years?

4) What notification did the trust provide the settler in regards to the tax treatment of the trust? When did that notification occur if there were any? Did the settler take part in the decision to treat the trust as a grantor trust?

5) Where did the settler live during the years 1977 through 1979?

6) What is the current status of the trust?

7) If the settler is still alive, where is he located? If he is dead, when did he die?

Please take whatever amount of time that you deem is necessary in order for you to thoroughly/accurately respond to my questions. THANK YOU!

| Information Due By: MARCH 11, 2004 | At Next Appointment | | Mail In | X |
|---|---|---|---|---|

| | | |
|---|---|---|
| FROM | Name and Title of Requestor:<br>Rawle I. Noel, Internal Revenue Agent, Badge # 13-24329 | Date: 2/17/2005 |
| | Office Location:<br>290 Broadway, 6th Floor<br>New York, N.Y. 10007<br>Phone: Voice (212) 436-1402<br>Supervisor # (212) 436-1265<br>Fax # (212) 436-1063 | Page 1 of 1 |

Form 4564

CRAVATH, SWAINE & MOORE LLP

WORLDWIDE PLAZA
825 EIGHTH AVENUE
NEW YORK, NY 10019-7475

TELEPHONE: (212) 474-1000
FACSIMILE: (212) 474-3700

PAUL D. SINIAWER
SENIOR ATTORNEY

CITYPOINT
ONE ROPEMAKER STREET
LONDON EC2Y 9HR
TELEPHONE: 44-20-7453-1000
FACSIMILE: 44-20-7860-1150

WRITER'S DIRECT DIAL NUMBER
(212) 474-1626

May 3, 2005

John Oakes Marriott Trust
u/a/d 8/19/60
Tax ID No. 13-6028390

Dear Mr. Noel:

I refer to your request dated February 17, 2005 for additional information regarding the trustees' claim for income tax refunds.

The ordinary income of the trust during 1978 and 1979 consisted of dividends from publicly-held U.S. companies, interest from U.S. Treasury issues and interest on the trust's cash balances. For information purposes, I enclose photocopies of the statements of Lehman Brothers Kuhn Loeb showing the assets of the trust as of December 29, 1978, June 29, 1979 and December 31, 1979. If you wish to examine additional statements for this time period, please let me know.

The settlor's father (who died in September 1978) did not receive any distributions from the trust during the years 1977, 1978 and 1979.

I have previously informed you that this firm did not prepare personal income tax returns for the settlor. I do not know if the settlor filed Federal income tax returns for the years 1977, 1978 and 1979 or whether the settlor paid U.K. taxes on the trust's income for those years.

For each tax year after 1979 until the trust terminated, the trustees filed a Form 1041 for the trust as a grantor-type trust and attached to the Form 1041 a statement of the income, deductions and credits for such tax year. A copy of such statement was furnished to the settlor. The settlor is a non-resident alien. Therefore, for each tax year, the trustees also filed a Form 1042 (Annual Withholding Tax Return) and deposited the taxes required to be withheld from the trust income. A copy of the Form 1042-S was also sent each year to the settlor. The records for the trust show that the trustees withheld and deposited the following tax amounts for 1977, 1978 and 1979:

| | |
|---|---|
| 1977 | $13,804.99 |
| 1978 | 12,105.15 |
| 1979 | 27,735.22 |

During the years 1977 through 1979, the settlor resided at 12 Wilton Crescent, London, England.

The trust is no longer in existence. Distributions were made to the settlor over the years leaving a nominal corpus in the trust of approximately $24,000 in 1998. The balance of the trust assets was distributed to the settlor in 2000 and the trust was terminated.

The settlor is alive and currently resides at 12 Wilton Crescent, London, England.

Please let me know if you need any additional information to process the trustees' tax refund claim.

Very truly yours,

Paul D. Siniawer

Mr. Rawle I. Noel
Internal Revenue Service
Manhattan District Examination Branch 5
290 Broadway, 6th Floor
New York, NY 10007

584A

Encls.

FIRST CLASS MAIL

STATEMENT

FOR MONTH ENDED 12/29/78

Lehman Brothers Kuhn Loeb Incorporated
One William Street, New York, N.Y. 10004

278

ORIGINAL

FOR ACCOUNT NO L03 9650122 PAGE 2

GEORGE J. GILLESPIE ESQ.
C/O CRAVATH-SWAIN & MOORE
1 CHASE MANHATTAN PLAZA
NEW YORK, N.Y. 10005

EDGAR R. KOERNER & GEORGE J. GILLESPIE
TTEES U/A/D 8/19/60
BY JOHN OAKES MARRIOTT
F/B/O JOHN OAKES MARRIOTT ET AL

| DATE | BOUGHT OR RECEIVED | SOLD OR DELIVERED | DESCRIPTION | PRICE OR ENTRY | DEBIT | CREDIT |
|---|---|---|---|---|---|---|
| | 9,152 | | CBS INC | BALANCE | | |
| | 3,744 | | EXXON CORP | BALANCE | | |
| | 6,074 | | GULF OIL CORP. | BALANCE | | |
| | 450 | | HEWLETT-PACKARD CO. | BALANCE | | |
| | 500 | | INTL.BUSINESS MACHINES CORP. | BALANCE | | |
| | 2,000 | | KOLLMORGEN CORP | BALANCE | | |
| | 3,600 | | ELI LILLY & CO. | BALANCE | | |
| | 3,400 | | PHILLIPS PETROLEUM CO. | BALANCE | | |
| | 3,300 | | RYAN HOMES INC. | BALANCE | | |
| | 600 | | SUPERIOR OIL CO | BALANCE | | |
| | 1,500 | | TEKTRONIX INC. | BALANCE | | |
| | 7,400 | | WARNER-LAMBERT CO. | BALANCE | | |
| | 100,000 | | EUROPEAN COAL & STL CMNTY NTS 8.375 DUE 02/15/1983 | BALANCE | | |
| | 140,000 | | U S TREASURY BILLS DUE 05/29/1979 | BALANCE | | |
| | 200,000 | | U.S.TREAS.BILLS DUE 05/10/1979 | BALANCE | | |
| | 260,000 | | U.S.TREAS.BILLS DUE 06/07/1979 | BALANCE | | |
| | | | INCOME ACCOUNT | | | |
| | | | BALANCE FORWARD 11/30/78 | | | 36,593.48 |

NOTE: YOUR ATTENTION IS DIRECTED TO THE REMARKS CONCERNING THIS STATEMENT WHICH APPEAR ON THE REVERSE SIDE.

STATEMENT FOR MONTH ENDED 06/29/79

Lehman Brothers Kuhn Loeb
Incorporated
One William Street, New York, N.Y. 10004

278

ORIGINAL

FOR ACCOUNT NO L03 9650122 PAGE 2

GEORGE J. GILLESPIE ESQ.
C/O CRAVATH-SWAIN & MOORE
1 CHASE MANHATTAN PLAZA
NEW YORK, N.Y. 10005

EDGAR R. KOERNER &
GEORGE J. GILLESPIE
TTEES U/A/D 8/19/60
BY JOHN OAKES MARIOTT
F/B/O JOHN OAKES MARIOTT ET AL

| DATE | BOUGHT OR RECEIVED | SOLD OR DELIVERED | DESCRIPTION | PRICE OR ENTRY | DEBIT | CREDIT |
|---|---|---|---|---|---|---|
| | 9,152 | | CBS INC | BALANCE | | |
| | 3,744 | | EXXON CORP | BALANCE | | |
| | 450 | | HEWLETT-PACKARD CO. | BALANCE | | |
| | 2,000 | | INTL.BUSINESS MACHINES CORP. | BALANCE | | |
| | 2,000 | | KOLLMORGEN CORP | BALANCE | | |
| | 3,600 | | ELI LILLY & CO. | BALANCE | | |
| | 3,400 | | PHILLIPS PETROLEUM CO. | BALANCE | | |
| | 5,500 | | RYAN HOMES INC. | BALANCE | | |
| | 600 | | SUPERIOR OIL CO | BALANCE | | |
| | 1,500 | | TEKTRONIX INC. | BALANCE | | |
| | 7,400 | | WARNER-LAMBERT CO. | BALANCE | | |
| | 100,000 | | EUROPEAN COAL & STL CMNTY NTS 8.375% DUE 02/15/1983 | BALANCE | | |
| | 120,000 | | U.S.TREAS.BILLS DUE 11/13/1979 | BALANCE | | |
| | 270,000 | | U.S.TREAS.BILLS DUE 07/12/1979 | BALANCE | | |
| | 130,000 | | U.S.TREASURY BILLS DUE 10/11/1979 | BALANCE | | |
| | 260,000 | | U.S.TREASURY BILLS DUE 11/15/1979 | BALANCE | | |
| | | | INCOME ACCOUNT | | | |

NOTE: YOUR ATTENTION IS DIRECTED TO THE REMARKS CONCERNING THIS STATEMENT WHICH APPEAR ON THE REVERSE SIDE.

STATEMENT

FOR MONTH ENDED 12/31/79

*Lehman Brothers Kuhn Loeb*
*Incorporated*
*One William Street, New York, N.Y. 10004*

278

ORIGINAL

FOR ACCOUNT NO L03 9650122 PAGE 1

GEORGE J. GILLESPIE ESQ.
C/O CRAVATH-SWAIN & MOORE
1 CHASE MANHATTAN PLAZA
NEW YORK, N.Y. 10005

EDGAR R. KOERNER &
GEORGE J. GILLESPIE
TTEES U/A/D 8/19/60
BY JOHN OAKES MARIOTT
F/B/O JOHN OAKES MARIOTT ET AL

| DATE | BOUGHT OR RECEIVED | SOLD OR DELIVERED | DESCRIPTION | PRICE OR ENTRY | DEBIT | CREDIT |
|---|---|---|---|---|---|---|
| | | | CASH ACCOUNT | | | |
| | | | BALANCE FORWARD 11/30/79 | | 1,938.24 | |
| 12/06 | | 245,000 | U.S.TREAS.BILLS DUE 12/06/1979 AT COST | REDEMPTION | | 235,861.18 |
| 12/06 | 250,000 | | U.S.TREASURY BILLS DUE 03/06/1980 11.60 DISCOUNTED FOR 91 DAYS | 97.067778 | 242,694.44 | |
| 12/11 | | 130,000 | U.S.TREAS.BILLS DUE 12/11/1979 AT COST | REDEMPTION | | 127,502.82 |
| 12/11 | 130,000 | | U.S.TREASURY BILLS DUE 03/06/1980 12.05 DISCOUNTED FOR 86 DAYS | 97.121389 | 126,282.81 | |
| | | | CLOSING BALANCE 12/31/79 | | 7,551.49 | |
| | | | SECURITY POSITIONS | | | |
| | 9,152 | | CBS INC | BALANCE | | |
| | 3,744 | | EXXON CORP | BALANCE | | |
| | 900 | | HEWLETT-PACKARD CO. | BALANCE | | |

NOTE: YOUR ATTENTION IS DIRECTED TO THE REMARKS CONCERNING THIS STATEMENT WHICH APPEAR ON THE REVERSE SIDE.

STATEMENT

FOR MONTH ENDED 12/31/79

Lehman Brothers Kuhn Loeb
Incorporated
One William Street, New York, N.Y. 10004

278

ORIGINAL

FOR ACCOUNT NO L03 9650122 PAGE 2

GEORGE J. GILLESPIE ESQ.
C/O CRAVATH-SWAIN & MOORE
1 CHASE MANHATTAN PLAZA
NEW YORK, N.Y. 10005

EDGAR R. KOERNER &
GEORGE J. GILLESPIE
TTEES U/A/D 8/19/60
BY JOHN OAKES MARIOTT
F/B/O JOHN OAKES MARIOTT ET AL

| DATE | BOUGHT OR RECEIVED | SOLD OR DELIVERED | DESCRIPTION | PRICE OR ENTRY | DEBIT | CREDIT |
|---|---|---|---|---|---|---|
| | 2,000 | | INTL.BUSINESS MACHINES CORP. | BALANCE | | |
| | 2,000 | | KOLLMORGEN CORP | BALANCE | | |
| | 3,600 | | ELI LILLY & CO. | BALANCE | | |
| | 3,400 | | PHILLIPS PETROLEUM CO. | BALANCE | | |
| | 5,500 | | RYAN HOMES INC. | BALANCE | | |
| | 3,000 | | SUPERIOR OIL CO | BALANCE | | |
| | 1,500 | | TEKTRONIX INC. | BALANCE | | |
| | 7,400 | | WARNER-LAMBERT CO. | BALANCE | | |
| | 100,000 | | EUROPEAN COAL & STL CMNTY NTS 8.375% DUE 02/15/1983 | BALANCE | | |
| | 380,000 | | U.S.TREAS.BILLS DUE 02/05/1980 | BALANCE | | |
| | 380,000 | | U.S.TREASURY BILLS DUE 03/06/1980 | BALANCE | | |
| | | | INCOME ACCOUNT | | | |
| | | | BALANCE FORWARD 11/30/79 | | | 20,678.07 |
| 12/0[illegible] | DIV.ON | 3,400 | PHILLIPS PETROLEUM CO. | | | 1,190.00 |
| 12/06 | DIV.ON | 2,000 | KOLLMORGEN CORP | | | 320.00 |
| 12/06 | INT. ON | 245,000 | U.S.TREAS.BILLS DUE 12/06/1979 | | | 9,138.82 |

NOTE: YOUR ATTENTION IS DIRECTED TO THE REMARKS CONCERNING THIS STATEMENT WHICH APPEAR ON THE REVERSE SIDE.



# INTERNAL REVENUE SERVICE
## 110 WEST 44TH STREET
## NEW YORK, NY, 10036

# FAX TRANSMITTAL

| | | | |
|---|---|---|---|
| TO: [redacted] MARRIOTT TRUST c/o PAUL D. SINIAWER | | FAX Number: 212-474-3700 | |
| Organization/Branch: N/A | Telephone Number: 212-474-1000 | Room Number/Stop: N/A | |
| Subject: CLAIM DETERMINATION FOR TAX YEARS 1977, 1978 & 1979 | | | |

| | | |
|---|---|---|
| From: BADGE #13-24329 RAWLE I. NOEL | Telephone Number: 212-719-6843 | Number of pages: (Including this page) 1 |
| | FAX Number: 212-719-6480 | |
| Organization/Branch/Section: IRS GROUP MANAGER # 212-719-6459 | | Date: 12/19/05 |

Message:
I SHOULD HAVE AN ANSWER FOR YOU NEXT MONTH REGARDING THIS CLAIM. I WILL BE OUT OF THE OFFICE FOR 3 WEEKS, THE DISTRICT COUNSEL PERSON IS STILL CONSIDERING ALL OF THE ISSUES. WE SHOULD/WILL HAVE SOMETHING FOR YOU BEFORE THE END OF NEXT MONTH. IF THERE IS A DISAGREEMENT OVER THE ISSUES THE FILE WILL BE RETURNED TO THE TAXPAYER ADVOCATE. IF WE DISAGREE YOU WILL PROBABLY HAVE TO RIGHT TO TAKE THE CASE TO DISTRICT COURT, IF YOU DESIRE.

**Note: Please call if the message you received was incomplete or illegible.**

This communication is intended for the sole use of the individual to whom it is addressed and may contain information that is privileged, confidential, and exempt from disclosure under applicable law. If the reader of this communication is not the intended recipient or the employee or agent responsible for delivering the communication to the intended recipient, you are hereby notified that any dissemination, distribution, or copying of this communication may be strictly prohibited. If you have received this communication in error, please notify the sender immediately by telephone call and return the communication at the address above via United States Postal Service. Thank you.

**Internal Revenue Service**

**Department of the Treasury**

**Taxpayer Identification Number:**
13-6028390
**Form:**
1041
**Tax Period(s) Ended and Claim Amount:**
12/31/77; $18,801.00
12/31/78; $55,156.00
12/31/79; $25,180.00
**Date Claim Received:**
December 16, 2002
**Person to Contact:**
Rawle I. Noel
**Contact Telephone Number:**
212-719-6843
**Employee Identification Number:**
13-24329
**Last date to Respond to this Letter:**
March 24, 2006

**Date:** March 9, 2006

John Oakes Marriott Trust
u/a/d 8/19/1960
c/o Paul D. Siniawer, Esq.
Cravath, Swaine & Moore
825 Eighth Avenue, 43rd Floor
New York, NY 10019-7475

Dear Taxpayer

We examined your claim and propose:

☐ Partial disallowance, as shown in the enclosed examination report. If you accept our findings, please sign and return the enclosed Form 2297, *Waiver Form* and Form 3363, *Acceptance Form.*

☒ Full disallowance, as shown in the enclosed examination report or at the end of this letter. If you accept our findings, please sign and return the enclosed Form 2297, *Waiver Form* and Form 3363, *Acceptance Form.*

☐ Full disallowance with additional tax due, as shown in the enclosed examination report. If you accept our findings, please sign and return the enclosed Form 2297, *Waiver Form* and the examination report.

*Note: If your claim involves a joint return, both taxpayers must sign the form(s).*

If you are a "C" Corporation filer, Section 6621(c) of the Internal Revenue Code provides for an interest rate 2% higher than the standard interest rate on deficiencies of $100,000 or more.

If you don't agree with our findings, you may request a meeting or telephone conference with the supervisor of the person identified in the heading of this letter. If you still don't agree with our findings, we recommend that you request a conference with our Appeals Office. If you request a conference, we will forward your request to the Appeals Office and they will contact you to schedule an appointment.

If the proposed change to tax is:

- $25,000 or less for *each* referenced tax period; you may send us a letter requesting Appeals consideration, indicating what you don't agree with and the reasons why you don't agree.
- More than $25,000 for *any* referenced tax period; you must submit a formal protest.

The requirements for filing a formal protest are explained in the enclosed Publication 3498, *The Examination Process*. Publication 3498 also includes information on your *Rights as a Taxpayer* and the *IRS Collection Process*.

If you don't respond by the date shown in the heading of this letter, we will process your case based on the adjustments shown in the enclosed examination report or the explanations given at the end of this letter.

If you have any questions, please contact the person whose name and telephone number are shown in the heading of this letter. Thank you for your cooperation.

Sincerely yours,

[signature]

Enclosures:
☐ Examination Report
Form 2297
☒ Form 3363
Publication 3498
Envelope
Publication 5

**Reason for Disallowance:**

The taxpayer's refund claims for all three years are time-barred under 28 U.S.C. section 2401(a). See Spannaus v. United States Department of Justice, 824 F.2d 52, 55-56; United States v. A.S. Kreider, 313 U.S. 443, 447,61 S. Ct. 1007, 85 L.Ed. 1447 (1941); Finkelstein v. United States, 943 F. Supp. 425, 431 (D.N.J. 1996).

Form **2297** (Rev. March 1982)

Department of the Treasury-Internal Revenue Service

# Waiver of Statutory Notification of Claim Disallowance

I, John Oakes Marriott Trust, u/a/d 8/19/1960 (Name, SSN or EIN) of c/o Paul D. Siniawer, Esq., Cravath, Swaine & Moore, 825 Eighth Avenue, 43rd floor, New York, NY 10019-7475 (Number, Street, City or Town, State, ZIP Code)

waive the requirement under Internal Revenue Code section 6532(a)(1 ) that a notice of claim disallowance be sent to me by certified or registered mail for the claims for credit or refund shown in column (d), below.

I understand that the filing of this waiver is irrevocable and it will begin the 2-year period for filing suit for refund of the claims disallowed as if the notice of disallowance had been sent by certified or registered mail.

**Claims**

| (a) Taxable Period Ended | (b) Kind of Tax | (c) Amount of Claim | (d) Amount of Claim Disallowed |
|---|---|---|---|
| 12-31-1977 | Income | $18,801.00 | $18,801.00 |
| 12-31-1978 | Income | $55,156.00 | $55,156.00 |
| 12-31-1979 | Income | $25,180.00 | $25,180.00 |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |

If you file this waiver for a joint return, both you and your spouse must sign the original and duplicate of this form. Sign your name exactly as it appears on the return. If you are acting under power of attorney for your spouse, you may sign as agent for him or her.

For an agent or attorney acting under a power of attorney, a power of attorney must be sent with this form if not previously filed.

For a partnership with excise or employment tax liability, all partners must sign. However, one partner may sign with appropriate evidence of authorization to act for the partnership.

For a person acting in a fiduciary capacity (executor, administrator, trustee), file Form 56, Notice Concerning Fiduciary Relationship, with this form if not previously filed.

For a corporation, enter the name of the corporation followed by the signature and title of the officer(s) authorized to sign.

Your Signature ➡ ____________________ ____________ (Date signed)

Spouse's Signature If A Joint Return Was Filed ➡ ____________________ ____________ (Date signed)

Taxpayer's Representative Sign Here ➡ ____________________ ____________ (Date signed)

Partnership/ Corporate Name: ____________________

Partners/ Corporate Officers Sign Here

➡ ____________________
____________________ (Title) ____________ (Date signed)

➡ ____________________
____________________ (Title) ____________ (Date signed)

NOTE - Filing this waiver within 6 months from the date the claim was filed will not permit filing a suit for refund before the 6-month period has elapsed unless a decision is made by the Service within that time disallowing the claims.

Form **3363**
(Rev. November 1983)

Department of the Treasury — **Internal Revenue Service**

# Acceptance of Proposed Disallowance of Claim for Refund or Credit

Name(s), SSN or EIN, and address of taxpayer(s) *(Number, Street, City or Town, State, ZIP Code)*

John Oakes Marriott Trust
u/a/d 8/19/1960
c/o Paul D. Siniawer, Esq,
Cravath, Swaine & Moore
825 Eighth Avenue, 43rd floor
New York, NY 10019-7475
13-6028390

| Year or Period | Date Claim Filed | Kind of Tax | Amount of Claim | Amount of Claim Disallowed | Amount of Claim Allowed |
|---|---|---|---|---|---|
| 12-31-1977 | 12-16-02 | Income | $18,801 | $18,801 | |
| 12-31-1978 | 12-16-02 | Income | $55,156 | $55,156 | |
| 12-31-1979 | 12-16-02 | Income | $25,180 | $25,180 | |
| | | | | | |

I accept the proposal of the Internal Revenue Service to disallow the claim(s) to the extent described above. This means only that I do not want the Service to consider the claim(s). It does not waive my right to file suit on the disallowance.

If you file this acceptance for a joint return, both you and your spouse must sign the original and duplicate of this form. Sign your name exactly as it appears on the return. If you are acting under power of attorney for your spouse, you may sign as agent for him or her.

For an agent or attorney acting under a power of attorney, a power of attorney must be sent with this form if not previously filed.

For a partnership with exise or employment tax liability, all partners must sign. However, one partner may sign with appropriate evidence of authorization to act for the partnership.

For a person acting in a fiduciary capacity (executor, administrator, trustee), file Form 56, Notice Concerning Fiduciary Relationship, with this form if not previously filed.

For a corporation, enter the name of the corporation followed by the signature and title of the officer(s) authorized to sign.

**Your Signature** ▶ ____________________ (Date)

**Spouse's Signature If A Joint Return Was Filed** ▶ ____________________ (Date)

**Taxpayer's Representative Sign Here** ▶ ____________________ (Date)

**Partnership/ Corporate Name** ▶ ____________________

**Partners/ Corporate Officers Sign Here**
▶ ____________________
(Title) (Date)
▶ ____________________
(Title) (Date)

## The IRS Mission

***Provide America's taxpayers top quality service by helping them understand and meet their tax responsibilities and by applying the tax law with integrity and fairness to all.***

# The Examination Process

### Introduction

The Internal Revenue Service (IRS) accepts most federal returns as filed. Some returns, however, are examined, or audited, to determine if income, expenses, and credits are reported accurately.

This publication discusses general rules and procedures we follow in examinations. It explains what happens before, during, and after an examination. It also explains appeal and payment procedures.

As a taxpayer, you have the right to fair, professional, prompt, and courteous service from IRS employees, as outlined in the Declaration of Taxpayer Rights found on page 3.

We must follow the tax rules set forth by Congress in the Internal Revenue Code. We also follow Treasury Regulations, court decisions, and other rules and procedures written to administer the tax laws.

If the examination results in a change to your tax liability, you may ask us to reconsider your case. Some reasons why we may reconsider your case include:

- Your submitting additional information that could result in a change to the additional amount we have determined that you owe;
- Your filing an original deliquent return after we have determined that you owe an additional amount, or;
- Your identifying a mathematical or processing error we made.

You must request reconsideration in writing and submit it to your local IRS office.

IRS
Department of the Treasury
Internal Revenue Service
www.irs.gov
Publication 3498 (Rev. 11-2004)
Catalog Number 73074S

## What's *Inside . . .*

**Introduction**

***Declaration of Taxpayer Rights*** . . . . . . . . . . 3

***Your Return Is Going To Be Examined*** . . . . . 3

- Before the Examination . . . . . . . . . . . . 3
- During the Examination . . . . . . . . . . . . 3
- Examinations by Mail . . . . . . . . . . . . . 3
- Examinations in Person . . . . . . . . . . . . 3
- How to Stop Interest from Accumulating. . . . 4
- Consents to Extend the Statute of Limitations . . . . . . . . . . . . . . . . . . 4
- Results of the Examination . . . . . . . . . . 4

***What to Do When You Receive a Bill from the IRS*** . . . . . . . . . . . . . . . . . . . 4

***What To Do if You Agree or Disagree with the Examination Results*** . . . . . . . . . . . 5

- If You Agree . . . . . . . . . . . . . . . . . . 5
- If You Do Not Agree . . . . . . . . . . . . . . 5
- Fast Track Mediation Services . . . . . . . . . 5

***How Do You Appeal a Decision?*** . . . . . . . . . 6

- The Appeal System . . . . . . . . . . . . . . 6
- Appeal Within the IRS . . . . . . . . . . . . . 6
- Making a Small Case Request . . . . . . . . . 6
- Filing a Formal Protest . . . . . . . . . . . . 6

***After the Examination*** . . . . . . . . . . . . . . . 7

- Payment Options . . . . . . . . . . . . . . . 7
- Temporarily Delay the Collection Process . . . . . . . . . . . . . . 7
- Innocent Spouse Relief . . . . . . . . . . . . 8
- You Must Contact Us . . . . . . . . . . . . . 8
- What If You Believe Your Bill Is Wrong . . . . . 8

**Privacy Act Statement.** . . . . . . . . . . . . . . . 8

**? Do you have questions or need help right away? Call us. We're here to help you.**

### For General Information:

For information about a specific examination please contact the person named on the appointment letter.

***For tax information and help:***

Call the number on the bill you received or call us toll free at:

1-800-829-1040 *(for 1040 filers)*
1-800-829-4933 *(for business filers)*
1-800-829-4059 /TDD

***For tax forms and publications:***

**1-800-829-3676**
1-800-829-4059 /TDD
1-703-368-9694-Forms by Fax

***Internet: www.irs.gov***

**FTP - ftp.fedworld.gov/pub/**

**TELENET-iris.irs.gov**

You'll find answers to frequently asked tax questions, tax forms on-line, searchable publications, hot tax issues, news, and help through e-mail.

***If you prefer to write to us . .***

Enclose a copy of your tax bill. Print your name, social security number or taxpayer identification number, and the tax form and period shown on your bill. Write to us at the address shown on your tax bill.

***You may also visit your nearest IRS Office.***

You'll find the exact address in your local phone book under *U.S. Government*

# *Declaration of Taxpayer Rights*

### I. Protection of Your Rights

*IRS employees will explain and protect your rights as a taxpayer throughout your contact with us.*

### II. Privacy and Confidentiality

*The IRS will not disclose to anyone the information you give us, except as authorized by law. You have the right to know why we are asking you for information, how we will use it, and what happens if you do not provide requested information.*

### III. Professional and Courteous Service

*If you believe that an IRS employee has not treated you in a professional, fair, and courteous manner, you should tell that employee's supervisor. If the supervisor's response is not satisfactory, you should write to the IRS Director for your Area or the Center where you file your return.*

### IV. Representation

*You may either represent yourself or, with proper written authorization, have someone else represent you. Your representative must be a person allowed to practice before the IRS, such as an attorney, certified public accountant, or enrolled agent (a person enrolled to practice before the IRS). If you are in an interview and ask to consult such a person, then we must stop and reschedule the interview in most cases.*

*You can have someone accompany you at an interview. You may make sound recordings of any meetings with our examination, appeal, or collection personnel, provided you tell us in writing 10 days before the meeting.*

### V. Payment of Only the Correct Amount of Tax

*You are responsible for paying only the correct amount of tax due under the law—no more, no less. If you cannot pay all of your tax when it is due, you may be able to make monthly payments.*

### VI. Help with Unresolved Tax Problems

*The Taxpayer Advocate Service can help you if you have tried unsuccessfully to resolve a problem with the IRS. Your local Taxpayer Advocate can offer you special help if you have a significant hardship as a result of a tax problem. For more information, call toll-free, 1-877-777-4778 (1-800-829-4059 for TTY/TDD) or write to the Taxpayer Advocate at the IRS office that last contacted you.*

### VII. Appeals and Judicial Review

*If you disagree with us about the amount of your tax liability or certain collection actions, you have the right to ask the Appeals Office to review your case. You may also ask a court to review your case.*

### VIII. Relief from Certain Penalties and Interest

*The IRS will waive penalties when allowed by law if you can show you acted reasonably and in good faith or relied on the incorrect advice of an IRS employee. We will waive interest that is the result of certain errors or delays caused by an IRS employee.*

# *Your Return Is Going To Be Examined.*

## *Before the Examination*

We accept most taxpayers' returns as filed. If we inquire about your return or select it for examination, it does not suggest that you are dishonest. The inquiry or examination may or may not result in more tax. We may close your case without change or you may receive a refund.

The process of selecting a return for examination usually begins in one of two ways. One way is to use computer programs to identify returns that may have incorrect amounts. The programs may be based on information returns, such as Forms 1099 or W-2, on studies of past examinations, or on certain issues identified by other special projects. Another way is to use information from compliance projects that indicates a return may have incorrect amounts. These sources may include newspapers, public records, and individuals. If we determine the information is accurate and reliable, we may use it to select a return for examination.

Publication 556, *Examination of Returns, Appeal Rights, and Claims for Refund,* explains the rules and procedures that we follow in examinations. The following sections give an overview of how we conduct examinations.

## *During the Examination*

### Examinations by Mail

Some examinations are conducted entirely by mail. If the examination is conducted by mail, you'll receive a letter from us asking for additional information about certain items shown on your return, such as income, expenses, and itemized deductions.

If the examination is conducted by mail, you can:

1. Act on your own behalf. *(In the case of a jointly filed return, either spouse can respond or both spouses can send a joint response.)*
2. Have someone represent you in correspondence with us. This person must be an attorney, accountant, enrolled agent, an enrolled actuary, or the person who prepared the return and signed it as the preparer. If you choose to have someone represent you, you must furnish us with written authorization. Make this authorization on Form 2848, *Power of Attorney and Declaration of Representative.*

   *Note: You may obtain any of the forms and publications referenced in this publication by calling 1-800-829-3676.*

### Examinations in Person

An examination conducted in person begins when we notify you that your return has been selected. We'll tell you what information you need to provide at that time. If you gather the information before the examination, we may be able to complete it more easily and in a shorter time.

If the examination is conducted in person, it can take place in your home, your place of business, an IRS office, or the office of your attorney, accountant, or enrolled agent *(a person enrolled to practice before the IRS).* If the time or place is not convenient for you, the examiner will try to work out something more suitable.

## *Your Return Is Going To Be Examined. (cont.)*

If the examination is conducted in person, you can:

1. Act on your own behalf. *(In the case of a jointly filed return, either spouse or both can attend the interview.)* If you are acting on your own behalf, you may leave to consult with your representative. We will suspend the interview and reschedule the examination. We cannot suspend the interview if we are conducting it as a result of your receiving an administrative summons.
2. Have someone accompany you, either to support your position or to witness to the proceedings.
3. Accompany someone who will represent you. This person must be an attorney, accountant, enrolled agent, an enrolled actuary, or the person who prepared the return and signed it as the preparer.
4. Have your representative act for you and not be present at the audit yourself. If you choose to have someone represent you in your absence, you must furnish us with written authorization. Make this authorization on **Form 2848,** *Power of Attorney and Declaration of Representative.*

### How to Stop Interest from Accumulating

During your examination, if you think you will owe additional tax at the end of the examination, you can stop interest from accumulating by paying all or part of the amount you think you will owe. Interest will stop accumulating on the part you pay when the IRS receives your money. Interest will only be charged on the tax, penalties, and interest that are unpaid on the date they are assessed.

### Consents to Extend the Statute of Limitations

We try to examine tax returns as soon as possible after they are filed, but occasionally we may request that you extend the statute of limitations of your tax return.

A return's statute of limitation generally limits the time we have to examine it and assess tax. Assessments of tax must be made within 3 years after a return is due or filed, whichever is later. We can't assess additional tax or make a refund or credit *(unless you filed a timely claim)* after the statute of limitations has expired. Also, if you disagree with the results of the examination, you can't appeal the items you disagree with unless sufficient time remains on the statute. Because of these restrictions, if there isn't much time remaining to examine your return, assess additional taxes, and/or exercise your appeal rights, you have the opportunity to extend the statute of limitations. This will allow you additional time to provide further documentation to support your position, request an appeal if you do not agree with our findings, or to claim a tax refund or credit. It also allows the Service time to complete the examination, make any additional assessment, if necessary, and provide sufficient time for processing.

A written agreement between you and the Service to extend the statutory period of a tax return is called a "consent." Consents can be used for all types of tax except estate tax.

There are two basic kinds of consent forms. One sets a specific expiration date for the extension, and the other for an indefinite period of time. Either type of consent may be limited by restrictive conditions. The use of a restricted consent is to allow the statute to expire with regard to all items on the return except those covered by the restrictive language.

If the statute of limitations for your tax return is approaching, you may be asked to sign a consent. You may:

1. Refuse to extend the statute of limitations;
2. Limit or restrict the consent to particular issues, or
3. Limit the extension to a particular period of time.

The consent will be sent or presented to you with a letter explaining this process and **Publication 1035,** *Extending the Tax Assessment Period.* For further information, refer to this publication.

### Results of the Examination

If we accept your return as filed, you will receive a letter stating that the examiner proposed no changes to your return. You should keep this letter with your tax records.

If we don't accept your return as filed, we will explain any proposed changes to you and your authorized representative. It is important that you understand the reasons for any proposed changes; don't hesitate to ask about anything that is unclear to you.

## *What to Do When You Receive a Bill from the IRS*



# What To Do If You Agree or Disagree with the Examination Results

## *If You Agree*

If you agree with a proposed *increase* to tax, you can sign an agreement form and pay any additional tax you may owe. You must pay interest and applicable penalties on any additional balance due. If you pay when you sign the agreement, interest is generally figured from the due date of your return to the date of your payment.

If you do not pay the additional tax and interest, you will receive a bill *(See "What To do When You Receive a Bill from the IRS" on page 4.)* If the amount due *(including interest and applicable penalties)* is less than $100,000 and you pay it within 21 business days, we will not charge more interest or penalties. If the amount is $100,000 or more, the period is reduced to 10 calendar days. If you can't pay the tax due at the end of the examination, you may pay whatever amount you can and request an installment agreement for the balance. *(See "Setting up an Installment Agreement" on page 7.)*

If you are entitled to a refund, you will receive it sooner if you sign the agreement form at the end of the examination. You will also be paid interest on the refund.

### If You Do Not Agree

If you do not agree with the proposed changes, the examiner will explain your appeal rights. If your examination takes place in an IRS office, you may request an immediate meeting with the examiner's supervisor to explain your situation. You may also enter into an *Agreement to Mediate* to help resolve disputes through Fast Track Mediation services. *(See next column.)* Mediation can take place at this meeting or afterwards. If an agreement is reached, your case will be closed.

If you cannot reach an agreement with the supervisor at this meeting, or if the examination took place outside an IRS office or was conducted through correspondence with an IRS Campus employee, the examiner will prepare a report explaining your position and ours. The examiner will forward your case to the Area office for processing .

You will receive:

- A letter (known as a 30-day letter) notifying you of your rights to appeal the proposed changes within 30 days,
- A copy of the examiner's report explaining the proposed changes, and
- An agreement or a waiver form.

You generally have 30 days from the date of the 30-day letter to tell us whether you will accept the proposed changes or appeal them. The letter will explain what steps you should take, depending on what action you choose. Be sure to follow the instructions carefully. Appeal rights are explained following this section.

**Caution**

If you do not respond to the 30-day letter, or if you respond but do not reach an agreement with an appeals officer, we will send you a 90-day letter, also known as a *Notice of Deficiency.* This is a legal document that explains the proposed changes and the amount of the proposed tax increase. You will have 90 days (150 days if it is addressed to you outside the United States) from the date of this notice to file a petition with the Tax Court. If you do not petition the Tax Court you will receive a bill for the amount due.

### Fast Track Mediation Services

If you do not agree with any or all of the IRS findings, you may request Fast Track Mediation services to help you resolve disputes resulting from the examination (audits). Fast Track Mediation offers an expedited process with a trained mediator, who will help facilitate communication, in a neutral setting. The mediator will work with you and the IRS to understand the nature of the dispute. The purpose is to help the two of you reach a mutually satisfactory resolution that is consistent with the applicable law. The mediator has no authority to require either party to accept any resolution. You may withdraw from the mediation process anytime. If any issues remain unresolved you will retain all of your usual appeal rights.

Most cases qualify for Fast Track Mediation. To begin the process, you may request the examiner or IRS representative to arrange a mediation meeting. Both you and the IRS representative must sign a simple *Agreement to Mediate* form. A mediator will then be assigned. Generally, within a week, the mediator will contact you and the IRS representative to schedule a meeting. After a brief explanation of the process, the mediator will discuss with you when and where to hold the mediation session.

For additional information, refer to Publication 3605, *Fast Track Mediation-A Process for Prompt Resolution of Tax Issues.*

# *How Do You Appeal a Decision?*

## The Appeal System

Because people sometimes disagree on tax matters, the Service has an appeal system. Most differences can be settled within this system without going to court.

Your reasons for disagreeing must come within the scope of tax laws, however. For example, you cannot appeal your case based only on moral, religious, political, constitutional, conscientious, or similar grounds.

If you do not want to appeal your case within the IRS, you may take your case directly to tax court.

## Appeal Within the IRS

You may appeal our tax decision to a local appeals office, which is separate and independent of the IRS Office taking the action you disagree with. An appeals office is the only level of appeal within the IRS. Conferences with Appeals Office personnel may be conducted in person, through correspondence, or by telephone with you or your authorized representative

If you want to have a conference with an appeals officer, follow the instructions in the letter you received. We will send your conference request letter to the appeals office to arrange for a conference at a convenient time and place. You or your qualified representative should be prepared to discuss all disputed issues at the conference. Most differences are settled at this level. Only attorneys, certified public accountants or enrolled agents are allowed to represent a taxpayer before Appeals. An unenrolled preparer may be a witness at the conference, but not a representative.

If you want to have a conference with an appeals officer, you may also need to file either a **small case request** or a **formal written protest** with the contact person named

in the letter you receive. Whether you file a small case request or a formal written protest depends on several factors.

## *Making a Small Case Request*

You may make a **small case request** if the total amount of tax, penalties, and interest for *each* tax period involved is $25,000 or less, and you do not meet one of the exceptions below for which a formal protest is required. If more than one tax period is involved and *any* tax period exceeds the $25,000 threshold, you must file a formal written protest for all periods involved. The total amount includes the proposed increase or decrease in tax and penalties or claimed refund. For an *Offer-in-Compromise*, include total unpaid tax, penalty, and interest due.

To make a small case request, follow the instructions in our letter to you by sending a brief written statement requesting an appeals conference. Indicate the changes you do not agree with and the reasons you do not agree with them.

**Caution** Be sure to send the protest within the time limit specified in the letter you received.

You must file a formal written protest

- If the total amount of tax, penalties, and interest for any tax period is more than $25,000;
- In all partnership and S corporation cases, regardless of the dollar amount;
- In all employee plan and exempt organization cases, regardless of the dollar amount;
- In all other cases, unless you qualify for other special appeal procedures, such as requesting appeals consideration of liens, levies, seizures, or installment agreements. *(See Publication 1660, Collection Appeal Rights, for more information on special collection appeals procedures.)*

## *Filing a Formal Protest*

When a **formal protest** is required, send it within the time limit specified in the letter you received. Include in your protest:

- Your name and address, and a daytime telephone number.
- A statement that you want to appeal the IRS findings to the Appeals Office.
- A copy of the letter showing the proposed changes and findings you do not agree with *(or the date and symbols from the letter.)*
- The tax periods or years involved.
- A list of the charges that you do not agree with, and why you do not agree.
- The facts supporting your position on any issue that you do not agree with.
- The law or authority, if any, on which you are relying.
- You must sign the written protest, stating that it is true, under the penalties of perjury as follows:

***"Under the penalties of perjury, I declare that I examined the facts stated in this protest, including any accompanying documents, and, to the best of my knowledge and belief, they are true, correct, and complete."***

If your representative prepares and signs the protest for you, he or she must substitute a declaration stating:

- That he or she submitted the protest and accompanying documents and;
- Whether he or she knows personally that the facts stated in the protest and accompanying documents are true and correct.

We urge you to provide as much information as you can, as this will help us speed up your appeal. This will save you both time and money.

Additional information about the Appeals process may be found in **Publication 5**, *Your Appeals Rights and How to Prepare a Protest if you Don't Agree.*

# After the Examination

## Payment Options

### You can't pay all that you owe now

If you can't pay all your taxes now, pay as much as you can. By paying now, you reduce the amount of interest and penalty you owe. Then immediately call, write, or visit the nearest IRS office to explain your situation. After you explain your situation, we may ask you to fill out a Collection Information Statement. If you are contacting us by mail or by telephone, we will mail the statement to you to complete and return to us. This will help us compare your monthly income with your expenses so we can figure the amount you can pay. We can then help you work out a payment plan that fits your situation. This is known as an installment agreement.

### Payment by credit card

Individual taxpayers may make credit *(and debit) card* payments on tax liabilities *(including installment agreement* payments) by phone or Internet. Payments may be made to the United States Treasury through authorized credit card service providers.

The service providers change a convenience fee based on the payment amount. You will be informed of the convenience fee amount before the credit card payment is authorized. This fee is in addition to any changes, such as interest, that may be assessed by the credit card issuer. Visit www.irs.gov to obtain a list of authorized service providers and to obtain updated information on credit card payment options.

Note: *You can use debit cards issued by VISA and MasterCard when making tax payments through the participating service providers. However, the service providers and card issuers treat debit cards and credit cards equally for the purpose of processing electronic tax payments. Therefore, debit card users are charged the same fee traditionally associated with credit card transactions*

### Payment by Electronic Federal Tax Payment System (EFTPS)

EFTPS is an Electronic Federal Tax Payment System developed by the Internal Revenue Service and Financial Management Service (FMS).

The system allows federal taxes to be paid electronically. The system allows the use of the Internet at www.eftps.gov or telephone to initiate tax payments directly. EFTPS payments may also be make through your local financial institution. The service is convenient, secure and saves time.

You may enroll in EFTPS through the website at www.eftps.gov or by completing a form available from EFTPS customer service at (800) 555-4477 or (800) 945-8400.

### Setting up an installment agreement

Installment agreements allow you to pay your full debt in smaller, more manageable amounts. Installment agreements generally require equal monthly payments. The amount and number of your installment payments will be based on the amount you owe and your ability to pay that amount within the time we can legally collect payment from you.

You should be aware, however, that an installment agreement is more costly than paying all the taxes you owe now. Like revolving credit arrangements, we charge interest on the unpaid portion of the debt. Penalties also continue to accumulate on installment agreements.

If you want to pay off your tax debt through an installment agreement, call the number shown on your bill. If you owe:

- $25,000 or less in tax, we will tell you what you need to do to set up the agreement;
- More than $25,000, we may still be able to set up an installment agreement for you, but we may also ask for financial information to help us determine your ability to pay.

Even if you set up an installment agreement, we may still file a Notice of Federal Tax Lien to secure the government's interest until you make your final payment.

*Note: We cannot take any collection actions affecting your property while we consider your request for an installment agreement, while your agreement is in effect, for 30 days after we reject your request for an agreement, or for any period while you appeal the rejection.*

If you arrange for an installment agreement, you may pay with:

- Personal or business checks, money orders, or certified funds *(all made payable to the U.S. Treasury)*,
- Credit and debit cards,
- Payroll deductions your employer takes from your salary and regularly sends to IRS, or
- Electronic transfers from your bank account or other similar means.

### Apply for an Offer-in-Compromise

In some cases, we may accept an *Offer-in-Compromise* to settle an unpaid tax account, including any penalties and interest. With this kind of arrangement, we can accept less that the full amount you owe when it is doubtful we will be able to collect the entire amount due.

Offers in compromise are also possible if collection action would create an economic hardship. You may want to discuss these options with your examiner.

## Temporarily Delay the Collection Process

If we determine that you can't pay *any* of your tax debt, we may temporarily delay collection until your financial condition improves. You should know that if we delay collecting from you, your debt will increase because penalties and interest are charged until you pay the full amount. During a temporary delay, we will again review your ability to pay. We may also file a *Notice of Federal Tax Lien*, to protect the government's interest in your assets. See Publication 594, *The IRS Collection Process.*

# *After the Examination (cont.)*

## *Innocent Spouse Relief*

If you filed a joint tax return, you are jointly and individually responsible for the tax and any interest or penalty due on the joint return, even if you later divorce. In some cases, a spouse may be relieved of the tax, interest, and penalties on a joint return.

You can ask for relief no matter how small the liability.

Three types of relief are available.

- Innocent spouse relief - may apply to all joint filers;
- Separation of liability - may apply to joint filers who are divorced, widowed, legally separated, or have not lived together for the past 12 months;
- Equitable relief - applies to all joint filers.

Innocent spouse relief and separation of liability apply only to items incorrectly reported on the return. If a spouse does not qualify for innocent spouse relief or separation of liability, the IRS may grant equitable relief.

Each type of relief is different and each has different requirements. You must file Form 8857, *Request for Innocent Spouse Relief*, to request any of these methods of relief. Publication 971, *Innocent Spouse Relief*, explains each type of relief, who may qualify, and how to request relief.

## *You Must Contact Us*

It is important that you contact us regarding any correspondence you receive from us. If you do not pay your bill or work out a payment plan, we are required by law to take further collection actions.

## *What If You Believe Your Bill is Wrong*

Caution

If you believe your bill is wrong, let us know as soon as possible. Call the number on your bill, write to the IRS office that sent you the bill, call 1-800-829-1040 *(for 1040 filers)*, 1-800-829-4933 *(for business filers)*, 1-800-829-4059 */TDD*, or visit your local IRS office.

To help us correct the problem, gather a copy of the bill along with copies of any records, tax returns, and canceled checks, etc., that will help us understand why you believe your bill is wrong.

If you write to us, tell us why you believe your bill is wrong. With your letter, include copies of all the documents you gathered to explain your case. Please do not send original documents. If we find you are correct, we will adjust your account and, if necessary, send you a corrected bill.

# *Privacy Act Statement*

*The Privacy Act of 1974 says that when we ask you for information, we must first tell you our legal right to ask for the information, why we are asking for it, and how it will be used. We must also tell you what could happen if you do not provide it and whether or not you must respond under the law.*

*This notice applies to tax returns and any papers filed with them. It also applies to any questions we need to ask you so we can complete, correct, or process your return; figure your tax; and collect tax, interest, or penalties.*

*Our legal right to ask for information is found in Internal Revenue Code sections 6001, 6011, and 6012(a), and their regulations. They say that you must file a return or statement with us for any tax you are liable for. Your response is mandatory under these sections.*

*Code section 6109 and its regulations say that you must show your social security number or individual taxpayer identification number on what you file. You must also fill in all parts of the tax form that apply to you. This is so we know who you are, and can process your return and papers. You do not have to check the boxes for the Presidential Election Campaign Fund.*

*We ask for tax return information to carry out the U.S. tax laws. We need it to figure and collect the right amount of tax.*

*We may give the information to the Department of Justice and to other Federal agencies, as provided by law. We may also give it to cities, states, the District of Columbia, and U.S. Commonwealths or possessions to carry out their tax laws. And we may give it to certain foreign governments under tax treaties they have with the United States.*

*We may also disclose this information to Federal, state, or local agencies that investigate or respond to acts or threats of terrorism or participate in intelligence or counterintelligence activities concerning terrorism.*

*If you do not file a return, do not give us the information we ask for, or provide fraudulent information, the law says that we may have to charge you penalties and, in certain cases, subject you to criminal prosecution. We may also have to disallow the exemptions, exclusions, credits, deductions, or adjustments shown on your tax return. This could make your tax higher or delay any refund. Interest may also be charged.*

*Please keep this notice with your records. You may want to refer to it if we ask you for other information. If you have questions about the rules for filing and giving information, please call or visit any Internal Revenue Service office.*

# Your Appeal Rights and How To Prepare a Protest If You Don't Agree

IRS
Department of the Treasury
Internal Revenue Service
www.irs.ustreas.gov
Publication 5 (Rev. 01-1999)
Catalog Number 46074I

## Introduction

This Publication tells you how to appeal your tax case if you don't agree with the Internal Revenue Service (IRS) findings.

## If You Don't Agree

If you don't agree with any or all of the IRS findings given you, you may request a meeting or a telephone conference with the supervisor of the person who issued the findings. If you still don't agree, you may appeal your case to the Appeals Office of IRS.

**If you decide to do nothing** and your case involves an examination of your income, estate, gift, and certain excise taxes or penalties, you will receive a formal Notice of Deficiency. The Notice of Deficiency allows you to go to the Tax Court and tells you the procedure to follow. If you do not go to the Tax Court, we will send you a bill for the amount due.

**If you decide to do nothing** and your case involves a trust fund recovery penalty, or certain employment tax liabilities, the IRS will send you a bill for the penalty. If you do not appeal a denial of an offer in compromise or a denial of a penalty abatement, the IRS will continue collection action.

If you don't agree, we urge you to appeal your case to the Appeals Office of IRS. The Office of Appeals can settle most differences without expensive and time-consuming court trials. [Note: Appeals can not consider your reasons for not agreeing if they don't come within the scope of the tax laws (for example, if you disagree solely on moral, religious, political, constitutional, conscientious, or similar grounds.)]

The following general rules tell you how to appeal your case.

## Appeals Within the IRS

Appeals is the administrative appeals office for the IRS. You may appeal most IRS decisions with your local Appeals Office. The Appeals Office is separate from - and independent of - the IRS Office taking the action you disagree with. The Appeals Office is the only level of administrative appeal within the IRS.

Conferences with Appeals Office personnel are held in an informal manner by correspondence, by telephone or at a personal conference. There is no need for you to have representation for an Appeals conference, but if you choose to have a representative, see the requirements under ***Representation.***

If you want an Appeals conference, follow the instructions in our letter to you. Your request will be sent to the Appeals Office to arrange a conference at a convenient time and place. You or your representative should prepare to discuss all issues you don't agree with at the conference. Most differences are settled at this level.

**In most instances, you may be eligible to take your case to court if you don't reach an agreement at your Appeals conference, or if you don't want to appeal your case to the IRS Office of Appeals. See the later section *Appeals To The Courts.***

## Protests

When you request an appeals conference, you may also need to file a formal written protest or a small case request with the office named in our letter to you. Also, see the special appeal request procedures in Publication 1660, Collection Appeal Rights, if you disagree with lien, levy, seizure, or denial or termination of an installment agreement.

### You need to file a written protest:

- In all employee plan and exempt organization cases without regard to the dollar amount at issue.
- In all partnership and S corporation cases without regard to the dollar amount at issue.
- In all other cases, unless you qualify for the small case request procedure, or other special appeal procedures such as requesting Appeals consideration of liens, levies, seizures, or installment agreements. See Publication 1660.

### How to prepare a protest:

When a protest is required, **send it within the time limit specified in the letter you received.** Include in your protest:

1) Your name and address, and a daytime telephone number,
2) A statement that you want to appeal the IRS findings to the Appeals Office,
3) A copy of the letter showing the proposed changes and findings you don't agree with (or the date and symbols from the letter),
4) The tax periods or years involved,
5) A list of the changes that you don't agree with, and why you don't agree.
6) The facts supporting your position on any issue that you don't agree with,
7) The law or authority, if any, on which you are relying.
8) You must sign the written protest, stating that it is true, under the penalties of perjury as follows:

**"Under the penalties of perjury, I declare that I examined the facts stated in this protest, including any accompanying documents, and, to the best of my knowledge and belief, they are true, correct, and complete."**

**If your representative prepares and signs the protest for you, he or she must substitute a declaration stating:**

1) That he or she submitted the protest and accompanying documents and
2) Whether he or she knows personally that the facts stated in the protest and accompanying documents are true and correct.

We urge you to provide as much information as you can, as this will help us speed up your appeal. This will save you both time and money.

### Small Case Request:

If the total amount for any tax period is not more than $25,000, you may make a small case request instead of filing a formal written protest. In computing the total amount, include a proposed increase or decrease in tax (including penalties), or claimed refund. For an offer in compromise, in calculating the total amount, include total unpaid tax, penalty and interest due. For a small case request, follow the instructions in our letter to you by: sending a letter requesting Appeals consideration, indicating the changes you don't agree with, and the reasons why you don't agree.

## Representation

You may represent yourself at your appeals conference, or you may have an attorney, certified public accountant, or an individual enrolled to practice before the IRS represent you. Your representative must be qualified to practice before the IRS. If you want your representative to appear without you, you must provide a properly completed power of attorney to the IRS before the representative can receive or inspect confidential information. Form 2848, Power of Attorney and Declaration of Representative, or any other properly written power of attorney or authorization may be used for this

purpose. You can get copies of Form 2848 from an IRS office, or by calling 1-800-TAX-FORM (1-800-829-3676).

You may also bring another person(s) with you to support your position.

## Appeals To The Courts

If you and Appeals don't agree on some or all of the issues after your Appeals conference, or if you skipped our appeals system, you may take your case to the United States Tax Court, the United States Court of Federal Claims, or your United States District Court, after satisfying certain procedural and jurisdictional requirements as described below under each court. (However, if you are a nonresident alien, you cannot take your case to a United States District Court.) These courts are independent judicial bodies and have no connection with the IRS.

## Tax Court

If your disagreement with the IRS is over whether you owe additional income tax, estate tax, gift tax, certain excise taxes or penalties related to these proposed liabilities, you can go to the United States Tax Court. (Other types of tax controversies, such as those involving some employment tax issues or manufacturers' excise taxes, cannot be heard by the Tax Court.) You can do this after the IRS issues a formal letter, stating the amounts that the IRS believes you owe. This letter is called a notice of deficiency. You have 90 days from the date this notice is mailed to you to file a petition with the Tax Court (or 150 days if the notice is addressed to you outside the United States). The last date to file your petition will be entered on the notice of deficiency issued to you by the IRS. If you don't file the petition within the 90-day period (or 150 days, as the case may be), we will assess the proposed liability and send you a bill. You may also have the right to take your case to the Tax Court in some other situations, for example, following collection action by the IRS in certain cases. See Publication 1660.

If you discuss your case with the IRS during the 90-day period (150-day period), the discussion will not extend the period in which you may file a petition with the Tax Court.

The court will schedule your case for trial at a location convenient to you. You may represent yourself before the Tax Court, or you may be represented by anyone permitted to practice before that court.

**Note:** If you don't choose to go to the IRS Appeals Office before going to court, normally you will have an opportunity to attempt settlement with Appeals before your trial date.

If you dispute not more than $50,000 for any one tax year, there are simplified procedures. You can get information about these procedures and other matters from the Clerk of the Tax Court, 400 Second St. NW, Washington, DC 20217.

### Frivolous Filing Penalty

**Caution:** If the Tax Court determines that your case is intended primarily to cause a delay, or that your position is frivolous or groundless, the Tax Court may award a penalty of up to $25,000 to the United States in its decision.

## District Court and Court of Federal Claims

If your claim is for a refund of any type of tax, you may take your case to your United States District Court or to the United States Court of Federal Claims. Certain types of cases, such as those involving some employment tax issues or manufacturers' excise taxes, can be heard only by these courts.

Generally, your District Court and the Court of Federal Claims hear tax cases only after you have paid the tax and filed a claim for refund with the IRS. You can get information about procedures for filing suit in either court by contacting the Clerk of your District Court or the Clerk of the Court of Federal Claims.

If you file a formal refund claim with the IRS, and we haven't responded to you on your claim within 6 months from the date you filed it, you may file suit for a refund immediately in your District Court or the Court of Federal Claims. If we send you a letter that proposes disallowing or disallows your claim, you may request Appeals review of the disallowance. If you wish to file a refund suit, you must file your suit no later than 2 years from the date of our notice of claim disallowance letter.

**Note:** Appeals review of a disallowed claim doesn't extend the 2 year period for filing suit. However, it may be extended by mutual agreement.

## Recovering Administrative and Litigation Costs

You may be able to recover your reasonable litigation and administrative costs if you are the prevailing party, and if you meet the other requirements. You must exhaust your administrative remedies within the IRS to receive reasonable litigation costs. You must not unreasonably delay the administrative or court proceedings.

Administrative costs include costs incurred on or after the date you receive the Appeals decision letter, the date of the first letter of proposed deficiency, or the date of the notice of deficiency, whichever is earliest.

**Recoverable litigation or administrative costs may include:**

- Attorney fees that generally do not exceed $125 per hour. This amount will be indexed for a cost of living adjustment.
- Reasonable amounts for court costs or any administrative fees or similar charges by the IRS.
- Reasonable expenses of expert witnesses.
- Reasonable costs of studies, analyses, tests, or engineering reports that are necessary to prepare your case.

**You are the prevailing party if you meet all the following requirements:**

- You substantially prevailed on the amount in controversy, or on the most significant tax issue or issues in question.
- You meet the net worth requirement. For individuals or estates, the net worth cannot exceed $2,000,000 on the date from which costs are recoverable. Charities and certain cooperatives must not have more than 500 employees on the date from which costs are recoverable. And taxpayers other than the two categories listed above must not have net worth exceeding $7,000,000 and cannot have more than 500 employees on the date from which costs are recoverable.

**You are not the prevailing party if:**

- The United States establishes that its position was substantially justified. If the IRS does not follow applicable published guidance, the United States is presumed to not be substantially justified. This presumption is rebuttable. Applicable published guidance means regulations, revenue rulings, revenue procedures, information releases, notices, announcements, and, if they are issued to you, private letter rulings, technical advice memoranda and determination letters. The court will also take into account whether the Government has won or lost in the courts of appeals for other circuits on substantially similar issues, in determining if the United States is substantially justified.

**You are also the prevailing party if:**

- The final judgment on your case is less than or equal to a "qualified offer" which the IRS rejected, and if you meet the net worth requirements referred to above.

A court will generally decide who is the prevailing party, but the IRS makes a final determination of liability at the administrative level. This means you may receive administrative costs from the IRS without going to court. You must file your claim for administrative costs no later than the 90th day after the final determination of tax, penalty or interest is mailed to you. The Appeals Office makes determinations for the IRS on administrative costs. A denial of administrative costs may be appealed to the Tax Court no later than the 90th day after the denial.

# FACSIMILE TRANSMISSION

**Internal Revenue Service**

[redacted]

| | | | |
|---|---|---|---|
| **SEND TO** JOHN OAKES MARRIOTT TRUST c/o PAUL SINIAWER | | **FROM** RAWLE NOEL | |
| **SUBJECT:** | | **Date:** 3/22/06 | |
| **Phone Number** 212-474-1626 | **FAX Number** 212-474-3700 | **Phone Number** | **FAX Number** 212-[redacted] 719-6233 |

**TOTAL PAGES, including cover sheet** ( 4 )

**COMMENTS:**

Confidentiality Notice

This facsimile transmission and/or accompanying documents may contain information which is privileged or is subject to non-disclosure provisions of Federal law. If you are not the intended recipient, you are hereby notified that any disclosure, distribution, or taking of action in reliance on the contents, is prohibited.

**Internal Revenue Service** **Department of the Treasury**

**Taxpayer Identification Number:**
13-6028390
**Form:**
1041
**Tax Period(s) Ended and Claim Amount:**
12/31/77;$18,801.00
12/31/78;$55,156.00
12/31/79;$25,180.00
**Date Claim Received:**
December 16, 2002
**Person to Contact:**
Rawle I. Noel
**Contact Telephone Number:**
212-719-6843
**Employee Identification Number:**
13-24329
**Last date to Respond to this Letter:**
April 14, 2006

**Date:** March 15, 2006

John Oakes Marriott Trust
u/a/d 8/19/1960
c/o Paul D. Siniawer, Esq.
Cravath, Swaine & Moore
825 Eighth Avenue, 43rd Floor
New York, NY 10019-7475

Dear Taxpayer

We examined your claim and propose:

☐ Partial disallowance, as shown in the enclosed examination report. If you accept our findings, please sign and return the enclosed Form 2297, *Waiver Form* and Form 3363, *Acceptance Form*.

☒ Full disallowance, as shown in the enclosed examination report or at the end of this letter. If you accept our findings, please sign and return the enclosed Form 2297, *Waiver Form* and Form 3363, *Acceptance Form*.

☐ Full disallowance with additional tax due, as shown in the enclosed examination report. If you accept our findings, please sign and return the enclosed Form 2297, *Waiver Form* and the examination report.

*Note: If your claim involves a joint return, both taxpayers must sign the form(s).*

If you are a "C" Corporation filer, Section 6621(c) of the Internal Revenue Code provides for an interest rate 2% higher than the standard interest rate on deficiencies of $100,000 or more.

If you don't agree with our findings, you may request a meeting or telephone conference with the supervisor of the person identified in the heading of this letter. If you still don't agree with our findings, we recommend that you request a conference with our Appeals Office. If you request a conference, we will forward your request to the Appeals Office and they will contact you to schedule an appointment.

If the proposed change to tax is:

- $25,000 or less for *each* referenced tax period; you may send us a letter requesting Appeals consideration, indicating what you don't agree with and the reasons why you don't agree.
- More than $25,000 for *any* referenced tax period; you must submit a formal protest.

The requirements for filing a formal protest are explained in the enclosed Publication 3498, *The Examination Process*. Publication 3498 also includes information on your *Rights as a Taxpayer* and the *IRS Collection Process*.

If you don't respond by the date shown in the heading of this letter, we will process your case based on the adjustments shown in the enclosed examination report or the explanations given at the end of this letter.

If you have any questions, please contact the person whose name and telephone number are shown in the heading of this letter. Thank you for your cooperation.

Sincerely yours,

Rawle L Noel

Rawle L Noel

Enclosures:
☐ Examination Report
Form 2297
☒ Form 3363
Publication 3498
Envelope

THIS REPORT SUPERCEDES REPORT DATED 3/9/06

**Reason for Disallowance:**

The taxpayer's refund claims for all three years are time-barred under 28 U.S.C. section 2401(a). See Spannaus v. United States Department of Justice, 824 F.2d 52, 55-56; United States v. A.S. Kreider, 313 U.S. 443, 447, 61 S. Ct. 1007, 85 L.Ed. 1447 (1941); Finkelstein v. United States, 943 F. Supp. 425, 431 (D.N.J. 1996).

CRAVATH, SWAINE & MOORE LLP

WORLDWIDE PLAZA
825 EIGHTH AVENUE
NEW YORK, NY 10019-7475

TELEPHONE: (212) 474-1000
FACSIMILE: (212) 474-3700

CITYPOINT
ONE ROPEMAKER STREET
LONDON EC2Y 9HR
TELEPHONE: 44-20-7453-1000
FACSIMILE: 44-20-7860-1150

WRITER'S DIRECT DIAL NUMBER

(212) 474-1626

THOMAS R. BROME
ROBERT D. JOFFE
ALLEN FINKELSON
RONALD S. ROLFE
PAUL C. SAUNDERS
DOUGLAS D. BROADWATER
ALAN C. STEPHENSON
MAX R. SHULMAN
STUART W. GOLD
JOHN E. BEERBOWER
EVAN R. CHESLER
PATRICIA GEOGHEGAN
D. COLLIER KIRKHAM
MICHAEL L. SCHLER
KRIS F. HEINZELMAN
B. ROBBINS KIESSLING
ROGER D. TURNER
PHILIP A. GELSTON
RORY O. MILLSON
NEIL P. WESTREICH
FRANCIS P. BARRON
RICHARD W. CLARY
WILLIAM P. ROGERS, JR.
JAMES D. COOPER
STEPHEN L. GORDON
DANIEL L. MOSLEY
GREGORY M. SHAW
PETER S. WILSON
JAMES C. VARDELL, III
ROBERT H. BARON
KEVIN J. GREHAN
STEPHEN S. MADSEN
C. ALLEN PARKER
MARC S. ROSENBERG
WILLIAM B. BRANNAN
SUSAN WEBSTER
TIMOTHY G. MASSAD
DAVID MERCADO
ROWAN D. WILSON
JOHN T. GAFFNEY
PETER T. BARBUR
SANDRA C. GOLDSTEIN
PAUL MICHALSKI
THOMAS G. RAFFERTY
MICHAEL S. GOLDMAN
RICHARD HALL
ELIZABETH L. GRAYER
JULIE A. NORTH
ANDREW W. NEEDHAM
STEPHEN L. BURNS
KATHERINE B. FORREST
KEITH R. HUMMEL
DANIEL SLIFKIN
JEFFREY A. SMITH
ROBERT I. TOWNSEND, III
WILLIAM J. WHELAN, III
SCOTT A. BARSHAY
PHILIP J. BOECKMAN
ROGER G. BROOKS
WILLIAM V. FOGG
FAIZA J. SAEED
RICHARD J. STARK
THOMAS E. DUNN
JULIE SPELLMAN SWEET
RONALD CAMI
MARK I. GREENE
SARKIS JEBEJIAN
JAMES C. WOOLERY
DAVID R. MARRIOTT
MICHAEL A. PASKIN
ANDREW J. PITTS
MICHAEL T. REYNOLDS
ANTONY L. RYAN
GEORGE E. ZOBITZ
GEORGE A. STEPHANAKIS
DARIN P. MCATEE
GARY A. BORNSTEIN
TIMOTHY G. CAMERON
KARIN A. DEMASI
LIZABETHANN R. EISEN
DAVID S. FINKELSTEIN
DAVID GREENWALD
RACHEL G. SKAISTIS
PAUL H. ZUMBRO
JOEL F. HEROLD
ERIC W. HILFERS
GEORGE F. SCHOEN
ERIK R. TAVZEL

SPECIAL COUNSEL
SAMUEL C. BUTLER
GEORGE J. GILLESPIE, III
THOMAS D. BARR

OF COUNSEL
ROBERT ROSENMAN
CHRISTINE BESHAR

# PROTEST

The undersigned, Paul D. Siniawer, on behalf of the John Oakes Marriott Trust u/a/d 8/19/1960 (the "Taxpayer"), hereby respectfully protests the disallowance of the Taxpayer's claims for refund of Federal income tax paid for the 1977, 1978 and 1979 tax years. Furthermore, the Taxpayer hereby requests a conference with an Appeals Officer in New York, New York.

General information relating to the Taxpayer's Protest is as follows:

1. The Taxpayer's mailing address is c/o Paul D. Siniawer, 825 Eighth Avenue, New York, NY 10019.

2. The Taxpayer was advised that its refund claims had been disallowed by letter (the "Notice of Disallowance") dated March 15, 2006, a copy of which is attached hereto as Exhibit A.

3. The Taxpayer's refund claims that were disallowed relate to Federal income tax paid for the 1977, 1978 and 1979 tax years.

4. The Taxpayer disagrees with the disallowance of its claims for refund of Federal income tax paid in the amounts of $18,801.14 with respect to 1977, $55,156.00 with respect to 1978 and $25,180.00 with respect to 1979.

5. The facts and the law that support the position of the Taxpayer are set forth below.

STATEMENT OF FACTS AND PROCEDURAL HISTORY

The Taxpayer is a trust established by John Oakes Marriott (the "Settlor") under an agreement dated August 19, 1960 (the "Agreement"). A copy of the Agreement is attached hereto as Exhibit B. Under the provisions of the Agreement, at any time during the trust term, the trustees of the trust were authorized to distribute trust principal to the Settlor without limitation. Several years ago, the trustees distributed the remaining principal of the trust to the Settlor and the trust terminated. At the time that the trust terminated, George J. Gillespie, III, and David T. Schiff were serving as trustees under the Agreement.

The Taxpayer's refund claims relate to its Federal income tax paid for 1977, 1978 and 1979. The Taxpayer timely filed a U.S. Fiduciary Income Tax Return (Form 1041) for the 1977 tax year (the "1977 Tax Return") reporting a net long-term capital gain of $73,874.70, which was credited to trust corpus, and paid tax of $18,801.14 in respect of that gain. The Taxpayer timely filed a U.S. Fiduciary Income Tax Return (Form 1041) for the 1978 tax year (the "1978 Tax Return") reporting a net long-term capital gain of $179,911, which was credited to trust corpus, and paid tax of $55,156 in respect of that gain. The Taxpayer timely filed a U.S. Fiduciary Income Tax Return (Form 1041) for the 1979 tax year (the "1979 Tax Return") reporting a net long-term

capital gain of $127,018, which was credited to trust corpus, and paid tax of $25,180 in respect of that gain. Copies of the Taxpayer's 1977 Tax Return, 1978 Tax Return and 1979 Tax Return are attached hereto as Exhibit C.

On April 15, 1981, the Taxpayer filed an amended U.S. Fiduciary Income Tax Return (Form 1041) for the 1977 tax year (the "1977 Amended Return") claiming a refund due in the amount of $18,801.14. On April 8, 1982, the Taxpayer filed amended U.S. Fiduciary Income Tax Returns (Forms 1041) for the 1978 and 1979 tax years (the "1978 Amended Return" and the "1979 Amended Return", respectively) claiming refunds due in the amounts of $55,156 and $25,180, respectively. The Internal Revenue Service ("IRS") acknowledged receipt of the Taxpayer's amended returns by date-stamping the letters transmitting such returns and returning them to me. Copies of the Taxpayer's 1977 Amended Return, 1978 Amended Return and 1979 Amended Return are attached hereto as Exhibit D, together with copies of the date-stamped letters from the IRS acknowledging receipt of such amended returns.

As stated in the 1977 Amended Return, 1978 Amended Return and 1979 Amended Return, the basis for the Taxpayer's refund claims is as follows:

> Under the provisions of the trust indenture . . . the trustees have unlimited discretion to distribute principal to the settlor of the trust. Accordingly, the settlor should be treated as the owner of the trust pursuant to section 677(a)(2) of the Internal Revenue Code. None of the trustees is an adverse party within the meaning of Section 672 of the Internal Revenue Code and the regulations thereunder.
>
> This amended Form 1041 is being filed as a return for a "grantor-type" trust to report the net long-term capital gain realized in [the tax year] as an item of income attributable to the settlor rather than to the trust . . .

On November 25, 1997, I sent a letter to the IRS inquiring as to the status of the Taxpayer's refund claims with respect to the 1977, 1978 and 1979 tax years. On April 29, 1999, having received no response to the prior letter, I sent another letter to the IRS regarding the Taxpayer's refund claims. The IRS responded by letter dated May 26, 1999, stating "We haven't resolved this matter because we haven't completed all the research necessary for a complete response. . . . You don't need to do anything further now on this matter." I did not receive any further communication from the IRS regarding the Taxpayer's refund claims, so I sent yet another letter to the IRS on December 13, 2002. Copies of my letters dated November 25, 1997, April 29, 1999 and December 13, 2002 and the IRS's letter dated May 26, 1999 are attached hereto as Exhibit E.

On March 15, 2006, the IRS issued the Notice of Disallowance denying the Taxpayer's refund claims with respect to the 1977, 1978 and 1979 tax years. The Notice of Disallowance stated the "Date Claim Received" as December 16, 2002 and the "Reason for Disallowance" as follows: "The taxpayer's refund claims for all three years are time-barred under 28 U.S.C. section 2401(a)."

## ARGUMENT

### I. Taxpayer's Refund Claims Were Timely Filed Under 26 U.S.C. § 6511.

Pursuant to 26 U.S.C. § 6511 ("Section 6511"), a claim for refund of an overpayment of tax must be filed within the later of 3 years from the time the return was filed or 2 years from the time the tax was paid. The Taxpayer timely filed the 1977 Tax Return, 1978 Tax Return and 1979 Tax Return. For purposes of Section 6511, any return filed on or before the last day prescribed for the filing thereof shall be considered as filed

on such last day. 26 U.S.C. § 6513. The last day prescribed for the filing of each of the Taxpayer's income tax returns was the 15th day of April following the close of the calendar year to which such return relates. 26 U.S.C. § 6072. Therefore, the Taxpayer's 1977 Tax Return is deemed to have been filed on April 15, 1978, the Taxpayer's 1978 Tax Return is deemed to have been filed on April 15, 1979 and the Taxpayer's 1979 Tax Return is deemed to have been filed on April 15, 1980. Consequently, the Taxpayer's refund claims for 1977, 1978 and 1979 would be timely under Section 6511 if they were filed on or before April 15, 1981, April 15, 1982 and April 15, 1983, respectively. The Taxpayer filed the 1977 Amended Return on April 15, 1981 and the 1978 Amended Return and 1979 Amended Return on April 8, 1982, and the IRS acknowledged receipt thereof by returning to me date-stamped copies of the letters transmitting such returns. An amended return constitutes a claim for refund within the meaning of section 6511 for the amount of the overpayment disclosed by the return. 26 Fed. Reg. § 301.6402-3(a)(5). Therefore, the Taxpayer filed timely claims for refund of income taxes paid for the 1977, 1978 and 1979 tax years.

II. Taxpayer's Refund Claims Are Not Time-Barred Under 28 U.S.C. 2401(a).

The Notice of Disallowance states that the basis for the IRS's denial of the Taxpayer's refund claims is that the claims are time-barred under 28 U.S.C. § 2401(a) ("Section 2401"). Section 2401 provides that "every civil action commenced against the United States shall be barred unless the complaint is filed within six years after the right of action first accrues." Section 2401 does not bar the Taxpayer's refund claims because it applies to civil actions in a court of competent jurisdiction, not administrative claims

for refund of taxes erroneously paid. Moreover, the Taxpayer would not be time-barred from filing a tax refund suit in a court of competent jurisdiction under the general limitation of Section 2401, because tax refund suits are governed by the more specific period of limitations under 26 U.S.C. § 6532 ("Section 6532") and 26 U.S.C. § 7422 ("Section 7422").

a. Section 2401(a) Does Not Apply to Administrative Claims. Section 2401(a) is a jurisdictional requirement for suits brought against the United States in Federal district court, not a time limitation on the filing of an administrative claim for refund of taxes erroneously paid. In Crown Coat Front Co. v. U.S., 386 U.S. 503, 510 (1967), the Supreme Court held that the "civil action" referred to in Section 2401 is a civil action in a court of competent jurisdiction. Similarly, in Bruno v. U.S., 547 F.2d 71 (8th Cir. 1976), the Court of Appeals for the Eighth Circuit refused to apply Section 2401 to an administrative claim for a refund of taxes filed seventeen years after the payment of the taxes. In that case, the taxpayer argued that a provision in Section 2401 which provides relief from the limitations period when the taxpayer is "beyond the seas" applied to his administrative claim for refund. The court disagreed and held that Section 2401 did not apply to the taxpayer's tax refund claim, stating that Section 2401 "is by its express terms applicable to civil actions in a court of competent jurisdiction, not to an administrative claim." Id. at 74. In this case, as discussed above, the Taxpayer filed timely administrative claims for refunds of taxes erroneously paid for 1977, 1978 and 1979 under Section 6511; such administrative claims are not time-barred by the general limitation for filing civil actions against the United States in Federal district court under Section 2401.

b. Section 6532 and Section 7422 Govern the Time for Filing Tax Refund Suits. The Federal district courts have concurrent jurisdiction with the Court of Federal Claims over suits against the United States for tax refunds. Therefore, the Taxpayer could file a tax refund suit either in the Court of Federal Claims or district court. There is a general six-year limitations period for actions in the Court of Federal Claims under 28 U.S.C. § 2501 ("Section 2501") that is analogous to the provision for district courts under Section 2401. If the Taxpayer were to file a tax refund suit in either Federal district court or the Court of Federal Claims, however, neither Section 2401 nor Section 2501 would bar that suit because the general six-year limitation under those sections yields to the more specific period of limitations for filing tax refund suits provided in Section 6532 and Section 7422 of the Internal Revenue Code. Section 7422 provides that no tax refund suit may be maintained in any court until an administrative claim for refund has been filed and Section 6532 provides that no tax refund suit under Section 7422 may be begun before six months from the date of filing the administrative claim nor after two years from the date of mailing by the IRS to the taxpayer of a notice of disallowance.

The Court of Federal Claims has permitted tax refund suits filed more than twenty years after the taxpayer's claim for refund was filed, where the suit was filed within two years of the IRS's disallowance of the claim. In Detroit Trust Company v. U.S., 131 Ct. Cl. 233 (Ct. Cl. 1955), the Court of Federal Claims found that a Taxpayer's tax refund suit that was filed twenty-eight years after the Taxpayer's claim for refund was filed with the IRS was not time-barred by the general six-year statute of limitations period under Section 2501. At the time of the proceeding, the Internal Revenue Code of 1939 was in effect and 26 U.S.C. § 3772 ("Section 3772"), the predecessor statute to

Section 7422 and Section 6532, similarly provided that no suit for the recovery of tax alleged to have been erroneously collected could be maintained in any court prior to six months from the date of filing the refund claim unless the IRS renders a decision within that time, nor after two years from the date of mailing by the IRS to the taxpayer of a notice of disallowance of the claim. The court found that the six-year statute of limitations under Section 2501 had no application to the tax refund suit, and instead the question was whether the taxpayer had complied with Section 3772. Thus, the taxpayer had the option to either file suit at the expiration of six months from the date of filing a claim or to await rejection of the claim, in which case the taxpayer would have two years to sue after the rejection. The court therefore held that the taxpayer's suit, filed twenty-eight years after filing his refund claim, but within two years of the date his refund claim was rejected, was not time-barred under Section 2501. In reaching its decision, the court noted that "any delay in the settlement of the claim up to [the date of the suit] was caused by the action of the Commissioner in not rejecting the claim at an earlier date." 131 Ct. Cl. at 228.

In Consolidated Edison v. U.S., 133 Ct. Cl. 376 (Ct. Cl. 1955), the Court of Federal Claims followed its decision in Detroit Trust Company, holding that a taxpayer's tax refund suit that was filed on May 25, 1950 with respect to tax refund claims that were filed on March 10, 1942 and March 11, 1943 was not barred by the six-year statute of limitations under Section 2501. The court held that the governing statute of limitations period was provided under Section 3772, thereby rejecting the IRS's argument that because the taxpayer could have sued within six months of filing its claims, its suit was time-barred under Section 2501.

The general six-year statute of limitations period provided for in Section 2401 is analogous to that in Section 2501 and, therefore, also yields to the more specific provisions of Section 7422 and Section 6532 with respect to tax refund suits in the district courts. In Bruno, the Court of Appeals for the Eighth Circuit agreed that Section 2401 did not apply to actions for tax refunds, which are instead governed by the more specific periods of limitations set forth in Section 7422 and Section 6511. 547 F.2d at 73. Similarly, in Gottlieb v. I.R.S., 4 Fed. Appx. 355 (9th Cir. 2001), the court held that the six-year statute of limitations period of Section 2401 did not apply to a suit for civil damages for wrongful collection of tax because a more specific limitations period was imposed by the statute pursuant to which the suit was brought.

In the Notice of Disallowance, the IRS cites three cases for its proposition that the Taxpayer's claim is time-barred under Section 2401. The first case, Spannaus v. U.S. Dept of Justice, 824 F.2d. 52 (D.C. Cir. 1987), dealt with the application of the general six-year limitations period under Section 2401 to a Freedom of Information Act suit. Unlike a tax refund suit, there is no statutory provision that provides a more specific period of limitations applicable to a suit under the Freedom of Information Act. Therefore, the general six-year limitations period controls the time within which a Freedom of Information Act suit must be brought. That case, however, is inapplicable to a tax refund suit for which there is a statutory provision providing a more specific period of limitations.

In each of the other two cases cited by the IRS in the Notice of Disallowance, the taxpayer filed a tax refund suit more than two years after the IRS's disallowance of its refund claim and argued that the suit, nevertheless, was not time-

barred under Section 6532 (or a predecessor thereto). In U.S. v. A.S. Kreider Co., 313 U.S. 443 (1941), the Supreme Court rejected the taxpayer's argument that her tax refund suit was not time-barred because it was filed within the general six-year limitation in § 24 (20) of the Judicial Code (a predecessor to Section 2401), finding that the more specific provision of § 1113(a) of the Revenue Act of 1926 applied to the suit. Because the taxpayer had not filed her suit within five years from the payment of the tax or two years of the disallowance of her refund claim as required under § 1113(a), the Supreme Court found that her claim was time-barred. In reaching its decision, the Court noted that "the limitation in § 1113(a) has no meaning whatever unless the limitation in § 24 (20) is construed not to govern proceedings for the recovery of internal revenue tax alleged to have been erroneously or illegally assessed or collected." 313 U.S. at 447-48.

Similarly, in Finkelstein v. United States, 943 F. Supp. 425 (D.N.J. 1996), the taxpayer filed a tax refund suit more than two years after her receipt of a notice of disallowance. The taxpayer argued that because the notice of disallowance was not sent by certified or registered mail as required by Section 6532, the two-year statute of limitations did not start running. The district court rejected her argument because she admitted receiving the notice and found that her claim was barred by Section 6532. In that case, the court noted that "[a] specific requirement of statute of limitations for actions against the United States, however, will prevail over the general limitations requirement of § 2401(a)." 943 F. Supp. at 431.

If the Taxpayer were to file a tax refund suit in Federal district court or the Court of Federal Claims within two years of the Notice of Disallowance, in contrast to the taxpayers in Kreider and Finkelstein, the Taxpayer's refund suit would be timely filed

under Section 6532. As the more specific limitations period of Section 6532 and Section 7422 (not the general limitation in Section 2401 or Section 2501) prescribe the time in which a tax refund suit may be instituted, such a suit would not be time-barred.

III. Taxpayer Has Legitimate Claims for Refund.

As set forth in detail in the 1977 Amended Return, the 1978 Amended Return and the 1979 Amended Return, the Taxpayer is entitled to a refund of income taxes paid for the 1977, 1978 and 1979 tax years on the basis that it was a grantor trust for those years (as well as all subsequent tax years) pursuant to 26 U.S.C. § 677(a)(2). I have not provided further analysis of the basis for the Taxpayer's refund claims herein because the IRS's stated reason for disallowing the Taxpayer's refund claims is that they are time-barred, and not that there was no legitimate basis for the refund claims.

CONCLUSION

For the foregoing reasons, the Taxpayer's refund claims for the 1977, 1978 and 1979 tax years are not time-barred by Section 2401. The Taxpayer has satisfied the requirements of Section 6511 for the timely filing of its refund claims. Any delay in resolving the Taxpayer's refund claims is a consequence of the IRS failing to respond to the Taxpayer's repeated inquiries as to the status of the refund claims. Moreover, as described in the amended returns, the Taxpayer is entitled to a refund of income taxes paid for the 1977, 1978 and 1979 tax years on the basis that it was a grantor trust for

those years (as well as all subsequent tax years). Therefore, the Taxpayer respectfully protests the disallowance of its refund claims.

Respectfully submitted,

Paul D. Siniawer

Dated: Apr. 13, 2006

STATEMENT OF TAXPAYER'S REPRESENTATIVE

I, PAUL D. SINIAWER, declare under penalties of perjury that I have prepared this Protest on behalf of the Taxpayer, and that although I do not have personal knowledge of the facts presented in the foregoing Protest, I believe them to be true, correct and complete.

Paul D. Siniawer

Dated: Apr 13, 2006

**EXHIBIT A**

Internal Revenue Service

Department of the Treasury

Taxpayer Identification Number:
13-6028390
Form:
1041
Tax Period(s) Ended and Claim Amount:
12/31/77;$18,801.00
12/31/78;$55,156.00
12/31/79;$25,180.00
Date Claim Received:
December 16, 2002
Person to Contact:
Rawle I. Noel
Contact Telephone Number:
212-719-6843
Employee Identification Number:
13-24329
Last date to Respond to this Letter:
April 14, 2006

Date: March 15, 2006

John Oakes Marriott Trust
u/a/d 8/19/1960
c/o Paul D. Siniawer, Esq.
Cravath, Swaine & Moore
825 Eighth Avenue, 43rd Floor
New York, NY 10019-7475

Dear Taxpayer

We examined your claim and propose:

☐ Partial disallowance, as shown in the enclosed examination report. If you accept our findings, please sign and return the enclosed Form 2297, *Waiver Form* and Form 3363, *Acceptance Form.*

☒ Full disallowance, as shown in the enclosed examination report or at the end of this letter. If you accept our findings, please sign and return the enclosed Form 2297, *Waiver Form* and Form 3363, *Acceptance Form.*

☐ Full disallowance with additional tax due, as shown in the enclosed examination report. If you accept our findings, please sign and return the enclosed Form 2297, *Waiver Form* and the examination report.

*Note: If your claim involves a joint return, both taxpayers must sign the form(s).*

If you are a "C" Corporation filer, Section 6621(c) of the Internal Revenue Code provides for an interest rate 2% higher than the standard interest rate on deficiencies of $100,000 or more.

If you don't agree with our findings, you may request a meeting or telephone conference with the supervisor of the person identified in the heading of this letter. If you still don't agree with our findings, we recommend that you request a conference with our Appeals Office. If you request a conference, we will forward your request to the Appeals Office and they will contact you to schedule an appointment.

If the proposed change to tax is:

- $25,000 or less for *each* referenced tax period; you may send us a letter requesting Appeals consideration, indicating what you don't agree with and the reasons why you don't agree.

- More than $25,000 for *any* referenced tax period; you must submit a formal protest.

The requirements for filing a formal protest are explained in the enclosed Publication 3498, *The Examination Process.* Publication 3498 also includes information on your *Rights as a Taxpayer* and the *IRS Collection Process.*

If you don't respond by the date shown in the heading of this letter, we will process your case based on the adjustments shown in the enclosed examination report or the explanations given at the end of this letter.

If you have any questions, please contact the person whose name and telephone number are shown in the heading of this letter. Thank you for your cooperation.

Sincerely yours,

Rawle I. Noel

[signature]

Enclosures:
☐ Examination Report
Form 2297
☒ Form 3363
Publication 3498
Envelope

THIS REPORT SUPERCEDES REPORT DATED 3/9/06

**Reason for Disallowance:**

The taxpayer's refund claims for all three years are time-barred under 28 U.S.C. section 2401(a). See Spannaus v. United States Department of Justice, 824 F.2d 52, 55-56; United States v. A.S. Kreider, 313 U.S. 443, 447, 61 S. Ct. 1007, 85 L.Ed. 1447 (1941); Finkelstein v. United States, 943 F. Supp. 425, 431 (D.N.J. 1996).

**EXHIBIT B**

COPY

THIS INDENTURE, made this 19th day of August, 1960, at Jersey City, in the State of New Jersey, between JOHN OAKES MARRIOTT, residing in London, England (hereinafter called the Settlor), party of the first part, and THEODORE C. RICHARDS, residing in East Orange, in said State of New Jersey, hereinafter called the "Trustee" or "Trustees"), party of the second part:

W I T N E S S E T H:

That the Settlor, in consideration of the covenants hereinafter contained, hereby assigns, transfers and sets over unto the Trustee the property described in the schedule hereto annexed and marked "Schedule A";

To have and to hold the said property unto the said Trustee, his successors and assigns, IN TRUST NEVERTHELESS, upon the following conditions and covenants, that is to say:

ARTICLE 1. -- The Trustee shall hold the same during the lifetimes of the Settlor and his father, SIR JOHN CHARLES OAKES MARRIOTT, and the survivor of them, and during the continuance of the Trust shall receive the income of said property and apply the net income as follows:

(a) As to one-half of the net income (or after the death of the Settlor, as to the whole of the net income) to apply the same to the use of SIR JOHN CHARLES OAKES MARRIOTT, the father of the Settlor, during his lifetime.

(b) As to one-half of the net income (or after the death of Sir John Charles Oakes Marriott, as to the whole of the net income), to apply the same to the use of the Settlor during his lifetime.

Upon the death of the survivor of the Settlor and his father, the trust shall terminate and the trust property then remaining with the Trustee shall be transferred and paid as follows: one-third to a widow of the Settlor then surviving and two-thirds (or if no widow of the Settlor is then surviving, the whole) to the issue of the Settlor then surviving, in equal shares per stirpes or in default of such issue then surviving to the issue then surviving of ADDIE WOLFF KAHN, grandmother of the Settlor, in equal shares per stirpes.

ARTICLE 2. -- The Trustee, in addition to and not in limitation of all common law and statutory authority, shall have power with regard to both real and personal property

in the trust fund and any part thereof or interest therein, to alter, to improve, to mortgage, to pledge, to lease (with or without option to renew or purchase), to exchange, to purchase and to sell at public or private sale for cash or upon credit, or for any other consideration, without approval of any court and without liability upon any person dealing with the Trustee to see to the application of any money or other property delivered to him; to lend and borrow money, with or without security, to or from any person or firm, association or corporation; to extend, with or without consideration, the time of payment or performance of any indebtedness, obligation or condition, in whole or in part; to consent, with or without consideration, to the payment or redemption of junior issues of corporate obligations or shares and to the payment of interest or dividends thereon, though senior issues be held by them and there be no payment or redemption in respect of such senior issues; to make investments and reinvestments in the obligations and stocks of governments, municipalities or other political entities and public or semi-public corporations, American or foreign, and in the shares, certificates of interest, warrants, obligations of any firm, association or trust, or of any American or foreign corporation, whether or no organized by him, and whether or no the whole or only a part of the issue, and to make any other investment although of a kind or in an amount not deemed a trust investment; to keep any or all stocks, shares, certificates, warrants, obligations or other property, real or personal, in the name of any person or corporation or in his own name without disclosing his fiduciary capacity; to determine what shall be charged or credited to income and what to principal and specifically, but without limitation, to make such determination in regard to shares of stock and cash dividends, rights and all other receipts in respect of the ownership of shares, certificates of interest or obligations and to purchase or retain shares, certificates of interest or obligations which pay dividends or interest in whole or in part otherwise than in cash and in his discretion to treat such dividends or interest in whole or in part as income; subject to the provisions of this Indenture, to determine who are the distributees hereunder and the proportions in which they shall take; to make distribution or divisions of principal hereunder in kind (though in unequal proportions or of different sorts) at values determined by him; to decide whether or no to make deductions from income for depreciation, obsolescence, amortization, depletion, exhaustion or waste and, if so, in what amount; to pay, compromise, contest or dispose of any claim or other matter directly or indirectly affecting the trust; to employ legal and investment counsel and to determine whether or no to act

upon their advice; to maintain an office or offices and to pay the expenses thereof and employ attorneys, secretaries, accountants and agents and to compensate them; and generally to do all things in relation to the trust, not in conflict with the provisions of this Indenture, which the Settlor could do if living and were the owner of the trust fund and if this deed of trust had not been executed.

ARTICLE 3. -- The Trustee shall have power to invest in real property, improved or unimproved, productive or unproductive, situate in America or elsewhere, or in any interest therein.

ARTICLE 4. -- The Trustee during the continuance of the trust shall have power, in his discretion, to apply to the use of the Settlor, any part of the principal of the trust fund, with or without obligation to make repayment of any sum so applied or to pay interest thereon.

ARTICLE 5. -- To the extent that the Trustee shall in his discretion decide to apply income or principal to the use of any beneficiary, he shall have discretion either to pay the same to the beneficiary in money, American or foreign or the equivalent or to satisfy obligations of the beneficiary or to furnish the beneficiary with the necessities, comforts and luxuries of life, and specifically but without limitation, with domestic, professional and other services and the use of real or personal property; and the Trustee shall have the power to expend such part of the principal or income of the trust fund as he may, in his discretion, see fit in the acquisition, improvement and upkeep of real or personal property in America or elsewhere for the use of a beneficiary and to pay out of income or principal all taxes and other governmental charges incident to the ownership and use of the same and also all costs of equipping, maintaining, staffing, supplying or victualing the same for the use of such beneficiary.

ARTICLE 6. -- In order to increase the number of Trustees hereunder to three, or whenever the number of Trustees hereunder shall be less than three whether by reason of death, resignation, incompetency, inability to act or otherwise, the existing Trustee or Trustees or a majority of them shall have power, in their discretion, from time to time to appoint by an instrument in writing, a Trustee or Trustees, provided, however, that at no time shall the number of Trustees hereunder be more than three. The Trustees or Trustee, as they shall exist at any time shall have all the powers of the Trustee originally named herein. The Trustees may act in all matters

by a majority vote and the decision, act or deed of the majority, shall be the decision, act or deed of all the Trustees. Any Trustee hereunder may resign by written instrument, acknowledged and delivered to a remaining Trustee, who shall notify the other remaining Trustee, or, if there be no other remaining Trustee, delivered or mailed to the last known address of the person who shall be the oldest then living issue of ADDIE WOLF KAHN, other than the issue of Maude E. Marriott (not a trustee hereunder) and twenty-one years of age.

ARTICLE 7. — All acts and decisions of the Trustees done or made in good faith shall be conclusive on all parties in interest. No Trustee shall be liable except for his or her own wilful misconduct or bad faith.

ARTICLE 8. — Any two of the issue of ADDIE WOLFF KAHN (other than the issue of Maud E. Marriott) as are at the time living and twenty-one years of age and otherwise competent and willing to act, shall have power to remove any Trustee hereunder (whether or no originally named herein), to appoint a new Trustee or Trustees whenever the number of Trustees hereunder competent to act and acting shall be less than three and shall have continued to be less than three for at least thirty days, to audit the accounts of the Trustees (interim or final) or the accounts of any retiring Trustee, to determine, [illegible] and settle the liabilities of whatever nature of any Trustee [illegible] of the trust to any Trustee and give [illegible] and indemnity. All acts and decisions of the issue of ADDIE WOLFF KAHN done or made in good faith, shall be conclusive upon all parties in interest, and none of such issue shall be liable, except for his or her own wilful misconduct or bad faith.

ARTICLE 9. — No beneficiary hereunder shall have any legal or equitable estate, right, title or interest in or to the principal or income of the trust fund or any part thereof, [illegible] the performance of the trust. The rights and obligations of the parties and of all persons interested hereunder (including the Trustees' compensation), except as herein specifically provided for, shall be governed by the law of the State of New Jersey. If any provision of this Indenture be illegal, such provision shall be deemed eliminated and the remaining provisions shall be appropriately enforced.

The Trustee acknowledges receipt and delivery to him at Jersey City, in the State of New Jersey, of the property mentioned in the Schedule aforesaid and accepts and covenants

to perform the trust according to the conditions herein set forth.

IN WITNESS WHEREOF, the parties hereto have at Jersey City in the State of New Jersey hereunto set their hands and seals the day and year first above mentioned.

/s/ John O. Marriott (SEAL)

/s/ Theodore C. Richards (SEAL)

THIS INSTRUMENT was signed, sealed and delivered and an assignment of the property mentioned in Schedule A, hereto annexed, was delivered and accepted the day and year first above written at Jersey City in the State of New Jersey, in the presence of:

/s/ [illegible]

STATE OF NEW JERSEY :
: SS.:
COUNTY OF HUDSON :

BE IT REMEMBERED, that on this 19th day of August, 1960, before me personally appeared JOHN OAKES MARRIOTT, who, I am satisfied, is the Settlor in the within indenture named, and I having first made known to him the contents thereof, he did acknowledge that he signed, sealed and delivered the same as his voluntary act and deed, for the uses and purposes therein expressed.

/s/ Elmer E. Hall
Elmer E. Hall
Notary Public of New Jersey
My Commission Expires June 6,1[illegible]

(Notary Seal)

STATE OF NEW JERSEY :
: SS.:
COUNTY OF HUDSON :

BE IT REMEMBERED, that on this 19th day of August, 1960, before me personally appeared THEODORE C. RICHARDS, who, I am satisfied, is the Trustee in the within indenture named, and I having first made known to him the contents thereof, he did acknowledge that he signed, sealed and delivered the same as his voluntary act and deed, for the uses and purposes therein expressed.

/s/ Elmer E. Hall
Notary Public of New Jersey
My Commission Expires June 6,1[illegible]

(Notary Seal)

## SCHEDULE A
## Principal of the Trust

All right, title and interest of the Settlor, JOHN OAKES MARRIOTT, as contingent remainderman in and to the trust under the will of his great-grandfather, Abraham Wolff, late of Morristown, New Jersey, of which trust Robert F. Brown and Theodore C. Richards are at present trustees, and Maud E. Mariott is life beneficiary.

COPY

In consideration of one dollar and other good and valuable consideration, the receipt of which is hereby acknowledged, I JOHN OAKES MARRIOTT, hereby assign, transfer and set over to THEODORE C. RICHARDS, as Trustee under an Indenture made and dated August 19th, 1960, between me as Settlor and said Richards as Trustee, and to his successors and assigns, all my right, title and interest as contingent remainderman in and to the trust under the will of my great-grandfather Abraham Wolff, late of Morristown, New Jersey, of which trust Robert F. Brown and Theodore C. Richards are at present trustees and Maud E. Marriott is life beneficiary; and I hereby give to said Theodore C. Richards, as Trustee under said Indenture made August 19th, 1960, his successors and assigns, full power and authority for his or their use as such Trustees, and at his or their cost, to ask, demand, collect, receive, compound and give acquittance for the same or any part thereof, and in my name or otherwise to prosecute and withdraw any suits or proceedings at law and in equity therefor.

IN WITNESS WHEREOF, I have hereunto set my hand and seal this 19th day of August, 1960.

Witness:

/s/ Elmer E. Hall

/s/ John O. Marriott (SEAL)

STATE OF NEW JERSEY :
: SS.:
COUNTY OF HUDSON :

BE IT REMEMBERED, that on this 19th day of August, 1960, before me personally appeared JOHN OAKES MARRIOTT, who, I am satisfied, is the assignor in the within assignment named, and I having first made known to him the contents thereof, he did acknowledge that he signed, sealed and delivered the same as his voluntary act and deed, for the uses and purposes therein expressed.

/s/ Elmer E. Hall

(Notarial Seal) Notary Public of New Jersey
My Commission Expires June [illegible], 1964