ORIGINAL

FILED
MAR 14 2008
U.S. COURT OF FEDERAL CLAIMS

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

GEORGE J. GILLESPIE, III, AND DAVID T. SCHIFF, AS TRUSTEES OF THE TRUST FOR THE BENEFIT OF JOHN OAKES MARRIOTT UNDER AN AGREEMENT DATED AUGUST 19, 1960,

Plaintiff,

v.

UNITED STATES OF AMERICA,

Defendant.

No. 08-169T

COMPLAINT

Plaintiffs, trustees of the trust for the benefit of John Oakes Marriott under an agreement dated August 19, 1960, by their attorney of record, for their Complaint, allege as follows:

1. Plaintiffs are George J. Gillespie, III, a resident of Westchester County, State of New York, and David T. Schiff, a resident of New York County, State of New York, as trustees of the trust for the benefit of John Oakes Marriott under an agreement dated August 19, 1960 (the "Trust").

2. Defendant is the United States of America.

3. This action arises under Section 7422 of the Internal Revenue Code of 1986, as amended, 26 U.S.C. § 1 et seq. (the "Code"), for the refund of taxes erroneously paid by the Trust.

4. Jurisdiction is conferred on the Court by 28 U.S.C. § 1491.

5. By this action, Plaintiffs seek the recovery from the Defendant of Federal income taxes paid by the Trust for its taxable years ended December 31, 1977, December 31, 1978 and December 31, 1979, together with interest thereon as allowed by law, as follows:

| Taxable Year Ended December 31 | Amount of Tax Paid and Claimed for Refund |
|---|---|
| 1977 | $18,801.14 |
| 1978 | $55,156.00 |
| 1979 | $25,180.00 |

6. The taxpayer identification number of the Trust is 13-6028390.

7. The Trust was established by John Oakes Marriott (the "Settlor") under an agreement dated August 19, 1960 (the "Agreement"). A copy of the Agreement is attached hereto as Exhibit A.

8. The Trust timely filed a U.S. Fiduciary Income Tax Return (Form 1041) for the 1977 tax year (the "1977 Tax Return") reporting a net long-term capital gain of $73,874.70, which was credited to trust principal, and paid tax of $18,801.14 in respect of that gain. A copy of the Trust's 1977 Tax Return is attached hereto as Exhibit B.

9. The Trust timely filed a U.S. Fiduciary Income Tax Return (Form 1041) for the 1978 tax year (the "1978 Tax Return") reporting a net long-term capital gain of $179,911, which was credited to trust principal, and paid tax of $55,156 in respect of that gain. A copy of the Trust's 1978 Tax Return is attached hereto as Exhibit C.

10. The Trust timely filed a U.S. Fiduciary Income Tax Return (Form 1041) for the 1979 tax year (the "1979 Tax Return") reporting a net long-term capital gain of $127,018, which was credited to trust principal, and paid tax of $25,180 in respect of that gain. A copy of the Trust's 1979 Tax Return is attached hereto as Exhibit D.

11. Section 671 of the Code provides that where it is specified that the grantor of a trust shall be treated as the owner of any portion of the trust, there shall be included in computing the taxable income of the grantor those items of income, deductions, and credits against tax of the trust which are attributable to that portion of the trust.

12. Section 677(a) of the Code provides that the grantor of a trust shall be treated as the owner of any portion of a trust whose income, in the discretion of the grantor or a nonadverse party, may be distributed to the grantor or held or accumulated for future distribution to the grantor.

13. The Agreement provides that the trustees of the Trust have unlimited discretion to distribute principal of the Trust to the Settlor.

14. Subsequent to filing the 1977 Tax Return, the 1978 Tax Return and the 1979 Tax Return, the trustees of the Trust determined that the Trust had erroneously paid tax in respect of the 1977, 1978 and 1979 tax years, because the capital gains in those years should have been included in the Settlor's taxable income pursuant to Section 677(a) of the Code.

15. On April 15, 1981, the Trust claimed a refund of an overpayment of tax for the 1977 tax year in the amount of $18,801.14 by filing an amended U.S. Fiduciary Income Tax Return (Form 1041) for the 1977 tax year (the "1977 Amended Return"). A copy of the Trust's 1977 Amended Return is attached hereto as Exhibit E, together with a copy of the date-stamped letter from the IRS acknowledging receipt of such amended return.

16. On April 8, 1982, the Trust claimed a refund of an overpayment of tax for the 1978 and 1979 tax years in the amounts of $55,156 and $25,180, respectively, by filing amended U.S. Fiduciary Income Tax Returns (Form 1041) for the 1978 and 1979 tax years (the "1978 Amended Return" and the "1979 Amended Return", respectively). Copies of the Trust's 1978 Amended Return and 1979 Amended Return are attached hereto as Exhibit F, together with a copy of the date-stamped letter from the IRS acknowledging receipt of such amended returns.

17. The 1977 Amended Return, the 1978 Amended Return and the 1979 Amended Return, stated the basis for the Trust's refund claims as follows: "Under the provisions of the trust indenture....the trustees have unlimited discretion to distribute principal to the settlor of the trust. Accordingly, the settlor should be treated as the owner of the trust pursuant to section 677(a)(2) of the Internal Revenue Code. None of the trustees is an adverse party within the meaning of Section 672 of the Internal Revenue Code and the regulations thereunder. This amended Form 1041 is being filed as a return for a "grantor-type" trust to report the net long-term capital gain realized in [the tax year] as an item of income attributable to the settlor rather than to the trust..."

18. On November 25, 1997, Paul D. Siniawer, an attorney associated with the firm of Cravath, Swaine & Moore, LLP, counsel for Plaintiffs, sent a letter to the IRS inquiring as to the status of the Trust's refund claims with respect to the 1977, 1978 and 1979 tax years. Neither the Plaintiffs nor Mr. Siniawer received any response to such letter from the Internal Revenue Service. A copy of such letter is attached hereto as Exhibit G.

19. On April 29, 1999, Mr. Siniawer sent another letter to the Internal Revenue Service inquiring as to the status of the Trust's refund claims. A copy of such letter is attached hereto as Exhibit H.

20. The Internal Revenue Service responded to Mr. Siniawer by letter dated May 26, 1999, stating "We haven't resolved this matter because we haven't completed all the research necessary for a complete response. . . . You don't need to do anything further now on this matter." A copy of such letter is attached hereto as Exhibit I.

21. Having heard nothing further from the Internal Revenue Service, on December 13, 2002, Mr. Siniawer sent another letter to the Internal Revenue Service inquiring as to the status of the Trust's refund claims. Neither the Plaintiffs nor Mr. Siniawer received any response to such letter from the Internal Revenue Service. A copy of such letter is attached hereto as Exhibit J.

22. On August 4, 2003, Mr. Siniawer called the Internal Revenue Service's Taxpayer Advocate Service at its national toll free number and spoke to Mr. Kump (#5403185) who told Mr. Siniawer that a Taxpayer Advocate would contact him by August 11, 2003 regarding the Trust's refund claims and that if Mr. Siniawer was not so contacted by such time, he should call the Local Taxpayer Advocate for Manhattan, New York.

23. On August 12, 2003, having not been contacted by a Taxpayer Advocate, Mr. Siniawer called the Local Taxpayer Advocate for Manhattan, New York and left a voicemail message. He received no response.

24. On August 19, 2003, Mr. Siniawer again called the national Taxpayer Advocate Service toll free number and spoke to Mr. Milo (#5400288) who told him that the Trust's refund claims had been assigned to Taxpayer Advocate Gerald Jackson.

25. On August 19, 2003, at Mr. Jackson's request, Mr. Siniawer sent Mr. Jackson a copy of Mr. Siniawer's December 13, 2002 letter to the Internal Revenue Service.

26. On April 30, 2004, Mr. Siniawer called Taxpayer Advocate Maryann Witt, to whom the Trust's refund claims had been reassigned. Ms. Witt informed Mr. Siniawer that she was waiting for the opinion of counsel regarding such claims.

27. On May 28, 2004, Mr. Siniawer again called Ms. Witt to inquire as to the status of the Trust's refund claims. Ms. Witt advised Mr. Siniawer that the matter of the Trust's refund claims had been referred to the national office for determination.

28. On August 13, 2004, Ms. Witt advised Mr. Siniawer that the Internal Revenue Service Agent to whom the Trust's refund claims had been assigned was Rawle Noel in the Manhattan District in New York City.

29. On September 28, 2004, Mr. Noel sent Mr. Siniawer a facsimile attaching documents which Mr. Noel stated detailed why he believed that the Trust's refund claims should be rejected. A copy of such facsimile is attached hereto as Exhibit K.

30. On November 18, 2004, Mr. Siniawer sent a letter to Mr. Noel explaining why he disagreed with Mr. Noel's position regarding the Trust's refund claims. A copy of such letter is attached hereto as Exhibit L.

31. On February 17, 2005, Mr. Noel sent Mr. Siniawer a facsimile requesting additional information regarding the Trust and its refund claims. A copy of such facsimile is attached hereto as Exhibit M.

32. On May 3, 2005, Mr. Siniawer sent Mr. Noel a letter responding to his request for additional information. A copy of such letter is attached hereto as Exhibit N.

33. On December 19, 2005, Mr. Noel sent Mr. Siniawer a facsimile stating "I should have an answer for you in the next month regarding this claim. . . .If we disagree you will probably have to [sic] right to take the case to District Court, if you desire." A copy of such facsimile is attached hereto as Exhibit O.

34. On March 9, 2006, Mr. Noel sent a letter to Mr. Siniawer proposing that the Trust's refund claims for the 1977, 1978 and 1979 tax years be disallowed in full. Such letter stated that the "Last date to Respond to this Letter" is March 24, 2006. A copy of such letter is attached hereto as Exhibit P.

35. Mr. Siniawer reminded Mr. Noel that a taxpayer has the right to appeal a proposed claim disallowance within 30 days and pointed out that the "Last date to Respond to this Letter" set forth in the March 9, 2006 letter was not 30 days from the date of the letter.

36. Mr. Noel sent a revised letter to Mr. Siniawer dated March 15, 2006 proposing that the Trust's refund claims for the 1977, 1978 and 1979 tax years be disallowed in full (the "30 Day Letter"). Such letter stated that it superseded the letter dated March 9, 2006 and that the "Last date to Respond to this Letter" is April 14, 2006. A copy of such letter is attached hereto as Exhibit Q.

37. The 30 Day Letter stated the "Date Claim Received" as December 16, 2002 and the "Reason for Disallowance" as follows: "The taxpayer's refund claims for all three years are time-barred under 28 U.S.C. section 2401(a)."

38. Title 28, Section 2401(a) of the United States Code, which provides that a civil action commenced against the United States shall be barred unless the complaint is filed within six years after the right of action first accrues, is not a time limitation on the filing of an administrative claim for a refund of taxes.

39. The time limit for filing a claim for refund of an overpayment of tax is set forth in Section 6511 of the Code which provides that a refund claim must be filed within the later of 3 years from the time the return was filed or 2 years from the time the tax was paid. Section 6513 of the Code provides that for purposes of Section 6511 of the Code, any return filed on or before the last day prescribed for the filing thereof shall be considered as filed on such last day.

40. The Trust's claim for refund for the 1977 tax year was timely filed on April 15, 1981, within three years of the date the 1977 Tax Return was deemed filed under Section 6513 of the Code (i.e., April 15, 1978), and the Trust's claim for refund for the 1978 and 1979 tax years were timely filed on April 8, 1982, within three years of the dates the 1978 Tax Return and the 1979 Tax Return were deemed filed under Section 6513 of the Code (i.e., April 15, 1979 and April 15, 1980, respectively).

41. On April 13, 2006, the Plaintiffs filed a formal protest with the Internal Revenue Service protesting the proposed disallowance of the Trust's refund claims for the 1977, 1978 and 1979 tax years. A copy of such protest is attached hereto as Exhibit R.

42. On September 7, 2006, Peter C. Tablan, an Internal Revenue Service Appeals Officer, sent a facsimile to Mr. Siniawer enclosing a copy of a letter from the Internal Revenue Service allegedly sent by certified mail on June 24, 2003 to the Plaintiffs, c/o Barry M. Strauss Associates, 307 5th Avenue, 8th Floor, New York, NY 10016, which stated that the Internal Revenue Service had disallowed the Trust's refund claims for the 1977 and 1979 tax years. A copy of such facsimile is attached hereto as Exhibit S.

43. Neither Plaintiffs nor Mr. Siniawer received the June 24, 2003 letter prior to September 7, 2006.

44. At no time during Mr. Siniawer's conversations and correspondance with the representatives of the Internal Revenue Service throughout 2003, 2004 and 2005 did any of them advise Plaintiffs or Mr. Siniawer that a letter had been sent by the Internal Revenue Service disallowing the Trust's refund claims for the 1977 and 1979 tax years on June 24, 2003.

45. In the facsimile cover page of September 7, 2006, Mr. Talban stated with respect to the June 24, 2003 letter that the "signed green certified receipt card is not in the file." The Internal Revenue Service has not provided the Plaintiffs with any proof that the June 24, 2003 letter was sent to the Plaintiffs.

WHEREFORE, Plaintiffs pray for judgment against Defendant awarding them a refund for income taxes paid in the amount of of $18,801.14 for the 1977 tax year, $55,156 for the 1978 tax year and $25,180 for the 1979 tax year, plus interest thereon as allowed by law, together with the costs and disbursements of this suit for refund and such other and further relief as the Court may deem just and proper.

Dated: March 11, 2008

Rowan D. Wilson
Attorney for Plaintiffs
Cravath, Swaine & Moore LLP
Worldwide Plaza
825 Eighth Avenue
New York, NY 10019
Tel: (212) 474-1348
Fax: (212) 474-3700